STATE of Wisconsin, Plaintiff-Respondent,

v.

Lawrence REPP, Defendant-Appellant.†

Court of Appeals

*No. 83–531–CR. Submitted on briefs October 28, 1983.—*
*Decided December 27, 1983.*
(Also reported in 342 N.W.2d 771.)

† Petition to review granted.

For the defendant-appellant, the cause was submitted on the briefs of *Jack E. Schairer,* assistant state public defender.

For the plaintiff-respondent, the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Michael R. Klos,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Robert W. Hansen, Reserve Judge.

BROWN, P.J.    Lawrence Repp was convicted of first-degree murder in the shooting and beating death of his mother, Evelyn Repp. Repp maintains the trial court erred by excluding certain psychiatric evidence in the first phase of his bifurcated trial. This psychiatric testimony, Repp asserts, was necessary to show his state of mind at the time of the murder, and its exclusion denied him the opportunity to make a proper intoxication defense. Further, Repp claims this exclusion was contrary to the law set out in *Loveday v. State,*[1] where the Wisconsin Supreme Court specifically held psychiatric opinion regarding a defendant's state of mind is admissible to prove an intoxication defense. The subsequent decision

[1] 74 Wis. 2d 503, 247 N.W.2d 116 (1976).

of *Steele v. State*[2] mandates, however, that psychiatric evidence is inadmissible to prove or disprove the defendant's capacity to form the requisite criminal state of mind. In this regard, *Steele* restricts the *Loveday* decision. Because the standard enunciated in *Steele* was properly applied by the court, we affirm.

Evelyn Repp drove to her son's house on her seventy-first birthday to help him pack for his pending move out of state. Thirty-six hours later, Mrs. Repp had not returned home. Her husband, Helmuth Repp, became concerned. He drove to his son's residence where he saw his wife's car in the back of the building. He rang the doorbell and pounded on the doors and windows. After getting no response, Helmuth called the police. Together they entered the residence. Lawrence Repp, who was inside the home, denied having seen his mother. The police officers looked throughout the house for Mrs. Repp. Finally, one of the officers descended the stairs to the basement where he found Mrs. Repp's body on the basement floor. She had been killed by a gunshot wound to the head and also suffered numerous bone fractures and other injuries consistent with "acute blunt trauma." A loaded .22 caliber derringer was found in Lawrence Repp's possession. A later search by police produced a baseball bat and other blood-stained items.

Repp's major argument is that it was error for the trial court to exclude psychiatric evidence offered to show that he lacked the state of mind necessary to commit first-degree murder. Specifically, Repp claims the testimony would have shown that he suffered from what he calls a "mental disorder of alcohol dependency" which was a contributing factor to his mother's death.[3] Citing *Loveday*, Repp claims this evidence is admissible, and its exclusion prevented him from adequately presenting a

---

[2] 97 Wis. 2d 72, 294 N.W.2d 2 (1980).

[3] Repp calls alcohol dependency a mental *disorder* rather than a mental *disease*. We refuse to acknowledge this.

meaningful intoxication defense pursuant to sec. 939.42, Stats.

In order to establish a defense for involuntary intoxication, the accused must show that he could not tell right from wrong at the time of the offense; to establish a voluntary intoxication defense, he must show that his condition negated the existence of a state of mind necessary to commit the crime. *Loveday*, 74 Wis. 2d at 513, 247 N.W.2d at 122. There is no disagreement that under *Loveday* psychiatric testimony is admissible on the question of intoxication.[4] *Id.* at 513–15, 247 N.W.2d at 123. The admission of this testimony, however, must now be couched within the confines of the *Steele* decision.

The admission or nonadmission of psychiatric testimony in the guilt phase of a bifurcated trial is governed by the holding in *Steele v. State*, 97 Wis. 2d 72, 294 N.W.2d 2 (1980). In *Steele*, the supreme court ruled that expert opinion in the form of psychiatric evidence is inadmissible to prove or disprove the defendant's capacity to form the requisite criminal intent. *Id.* at 98, 294 N.W.2d at 14.

In determining the breadth of the *Steele* decision, we first note the commission of a crime consists of two

---

[4] The *Loveday* decision focused on whether psychiatric opinion testimony used to prove an intoxication defense fell within the confines of sec. 971.16(3), Stats., requiring a medical report of a defendant's mental condition to be forwarded to the district attorney at least three days before trial. The supreme court held the testimony was outside the scope of sec. 971.16(3) because intoxication is not a mental disease and that the trial court had erred in excluding it. The error was deemed to be harmless. It is this portion of the *Loveday* decision, where the court determined the psychiatric opinion evidence was admissible, which has been affected by *Steele*.

parts: a physical part, an act or omission, and a mental part, the state of mind. LeFave and Scott, *Criminal Law*, § 27 (1972). Generally speaking, the mental aspects of crime are described statutorily by such words as intention, knowledge, recklessness and negligence. *Id.* Therefore, when Repp claims the psychiatric testimony was necessary to show his state of mind at the time of the murder, he is essentially saying that the testimony would have somehow affected the "intention" or *mens rea* element of the first-degree murder charge. This testimony clearly falls under the *Steele* mandate and is, therefore, inadmissible. Thus, any exclusion of psychiatric opinion testimony as it related to the defendant's mental state is proper. To the extent that this conflicts with *Loveday*, *Steele* has overruled *Loveday*.

This outcome does not entirely prohibit the admission of psychiatric testimony during a trial. For example, a psychiatrist may testify as to a defendant's alcoholic condition, the history of that condition and the long- and short-term effects of alcohol use and abuse. What the psychiatrist may not do is offer his opinion as to the effect the intoxication has on that particular defendant's capacity to form the criminal *mens rea*. If the psychiatric testimony takes the form of expert *opinion* testimony "tending to prove or disprove the defendant's capacity to form the requisite criminal intent," its admission is barred. *Steele* at 98, 294 N.W.2d at 14.

The defendant seems to be basing his claim of error on the argument that the Wisconsin Supreme Court's decision in *Steele* prohibits only expert opinion evidence on the defendant's capacity to form intent—by reason of mental *disease*—but does not prohibit the admission of expert psychiatric opinion evidence on a mental *disorder*. We refuse to draw that fine distinction. We believe that when *Steele* prohibited expert opinion evidence on the

capacity to form intent, it meant to exclude the admission of all expert psychiatric opinion evidence on whether the defendant did, in fact, form the intent to kill regardless of whether it is a mental defect or a mental disorder.

As we said in *State v. Dalton*, 98 Wis. 2d 725, 298 N.W.2d 398 (Ct. App. 1980), psychiatric evidence relating to the question of whether a defendant intended a specific act assumes that psychiatrists have devised some scientific method of inquiry which can produce facsimiles that bring the past to life. The *Dalton* court dismissed that assumption and so has *Steele*. *Dalton* at 731–32, 298 N.W.2d at 400–01. The *real* facts are forever gone. We cannot get into the defendant's mind to reconstruct the past with accuracy. Thus, we are dealing with probabilities as to what the defendant's intent was. The psychiatrist has no scientific knowledge on which to base an opinion on intent based on past acts but "arrogated to himself an ability superior to that of the jury to evaluate evidence and arrive at a determination of whether [the defendant] had the intent to kill his victim." *Id.* at 731, 298 N.W.2d at 400–01.

Whether it be the exclusionary rule enunciated in *Steele* or the *Dalton* rationale which discussed the longstanding rules regarding the admissibility of expert testimony in Wisconsin, the result is the same. The jury has before it the same facts relied upon by the psychiatrist in forming his opinion. In this context, the psychiatrist is not to be a "super juror" whose opinion is cloaked in the "seeming scientific knowledge of an expert." *Id.* at 730–31, 298 N.W.2d 400–01. Therefore, psychiatric opinion testimony, as it relates to the defendant's state of mind, is not admissible.

Our review of the defendant's offer of proof indicates the testimony was properly excluded. The defense counsel's affidavit indicates that:

Dr. Gale would state that based on his interviews conducted with Lawrence Repp, his overview of medical records, and other collateral materials, *it would be his opinion,* to a reasonable degree of medical certainty, that a combination of factors . . . [including] severe intoxication . . . would have caused Mr. Repp to lose control and judgment. [Emphasis added.]

The trial court properly exercised its discretion in disallowing, under *Steele,* Dr. Gale's opinion testimony on what would have caused Repp "to lose control and judgment."

It should be noted that the trial court questioned defense counsel in an attempt to ascertain exactly why the evidence was being offered. The following interaction took place on the record:

[THE COURT:]
Now, I assume that that's what you were going to introduce Dr. Gale's testimony for. *For the purpose of showing or disproving the defendant's capacity to form the requisite criminal intent;* is that correct Mr. Pieper?
MR. PIEPER: Correct.
THE COURT: Alright, your record is made. [Emphasis added.]

The defense counsel's acquiescence on the record to this summarization of his offer of proof shows that whether it be for diminished capacity or for an alcohol-related disorder, the intended result is the same—an attempt to have a psychiatrist say that some psychiatric phenomenon has destroyed a person's ability to intend his actions.

We are not saying all state of mind evidence falls under this exclusion. In fact, *Steele* specifically states:

It should be made clear, however, that we do not exclude from admission in the guilt phase of the trial ordinarily admissible evidence which tends to prove the state of mind of the defendant.

*Id.* at 97–98, 294 N.W.2d at 14. In conformity with the *Steele* mandate, the trial court admitted nonpsychiatric

evidence relating to Repp's state of mind during the guilt phase of the trial. The court allowed evidence of previous hospitalizations at Elmbrook and Kettle Moraine hospitals and treatment at the Veteran's Administration hospital. Further evidence was presented regarding Lawrence Repp's persistent and sometimes phantom medical complaints. His bizarre living habits and general inability to cope were well-documented. The arresting officers also testified as to his dazed condition and physical complaints at the time of the arrest. The trial court's decision to admit this evidence further exemplifies a proper application of *Steele,* which was not intended to exclude otherwise admissible state of mind evidence.

Repp next objects to the constitutionality of Wisconsin's bifurcated trial system as he claims it relieves the prosecution of its burden of proving the "intent" element of the crime. We have no authority to supersede the Wisconsin Supreme Court and independently determine the constitutionality of the bifurcated trial system. We are satisfied that the procedure was approved in *Steele* and was appropriately executed by the trial court.

Repp also alleges error on other matters which occurred during the trial. First, Repp contends that it was error for the trial court to fail to instruct on the lesser-included offense of second-degree murder. The submission of a lesser-included offense requires that there be some reasonable ground in the evidence for conviction of the lesser-included offense and a reasonable ground for acquittal of the greater offense. *State v. Stanton,* 106 Wis. 2d 172, 182, 316 N.W.2d 134, 139 (Ct. App. 1982). The evidence supporting submission of the lesser-included offense must be relevant and appreciable when viewed in a light most favorable to the defendant. *Hawthorne v. State,* 99 Wis. 2d 673, 683–84, 299 N.W.2d 866, 871 (1981). The question on appeal centers on the issue of

whether the evidence presents a reasonable ground for acquittal on the charge of first-degree murder.

No "relevant and appreciable" evidence was introduced to negate Lawrence Repp's intent to commit homicide. The evidence of Repp's bizarre habits and deteriorating lifestyle tended to show that he had personality and emotional problems but not that he lacked the intent to kill his mother. On the contrary, the evidence and the nature of the injuries showed a deliberate attempt to commit the homicide. Likewise, neither the absence of a motive to murder nor his dazed behavior after the event relates to the lack of intent on Repp's part.

■

There was sufficient evidence for a jury to find beyond a reasonable doubt the intent to kill. Mrs. Repp was shot in the head by a .22 caliber derringer, which was in her son's possession at the time of the arrest. The body of Mrs. Repp had been moved from the living room to the basement. Repp attempted to clean up and otherwise dispose of the blood stains. The police officers noted no signs of intoxication. Repp responded to their questions and was angry that they entered without his permission. The evidence was consistent with the formation of an intent to murder and the deliberate act of homicide.

■

Repp also makes several objections to items seized by the police both upon entering Repp's residence and later pursuant to a search warrant. First, "neither the Fourth Amendment nor the Wisconsin Constitution bars police officers from making warrantless entries and searches when they reasonably believe that a person is in need of aid." *State v. Prober,* 98 Wis. 2d 345, 360, 297 N.W.2d 1, 9 (1980). *Prober* set forth a two-part test to determine the existence of an emergency:

First, the search is invalid unless the searching officer is actually motivated by a perceived need to render aid or

assistance. Second, even though the requisite motivation is found to exist, until it can be found that a reasonable person under the circumstances would have thought an emergency existed, the search is invalid. Both the subjective and objective tests must be met.

*Id.* at 365, 297 N.W.2d at 12.

Both tests were met in this case. Subjectively, the police officers responded to Helmuth Repp's fear that his wife was in some danger. Objectively, a reasonable person would have thought that Mrs. Repp's absence for over thirty-six hours, the lack of response from the son's residence, and the position of Mrs. Repp's parked car led to the conclusion that Mrs. Repp was in need of aid or assistance. The suspicions were bolstered by Repp's agitated responses to police questions and his assertion that he had not seen his mother for three days, even though her car was parked outside. The search was valid.

Second, the subsequent search warrant specifying the Lawrence Repp residence and garage as the object of a search and directing officers to search for "things used in the commission of or [which] may constitute evidence of a crime to wit; murder" was sufficient. The police had ample probable cause to believe that Mrs. Repp had been murdered in the Lawrence Repp residence. The trial court also relied upon the supporting affidavit which more specifically described the premises and the instrumentalities sought. *See State v. Starke,* 81 Wis. 2d 399, 410–13, 260 N.W.2d 739, 745–47 (1978). The evidence from this subsequent search was also properly admitted.

Finally, the trial court refused to allow a psychiatrist to testify during phase II that Repp was suffering from schizophrenia in 1973 and 1974. It was not error to do so. The trial court merely exercised its broad discretion in

ruling on the admissibility of evidence. The diagnosis was seven years before Mrs. Repp's murder; its relevance was questionable. Further, the diagnosis was eventually admitted as history relating to a diagnosis by another psychiatrist.

Because we have perceived no miscarriage of justice, the defendant is not entitled to a new trial in the interest of justice. It does not appear from the record that retrial would result in a different verdict. *Garcia v. State,* 73 Wis. 2d 651, 654–55, 245 N.W.2d 654, 655–56 (1976). (Footnote omitted.)

*By the Court.*—Judgment affirmed.