STATE of Wisconsin, Plaintiff-Respondent,

v.

Lawrence REPP, Defendant-Appellant-Petitioner.

Supreme Court

*No. 83–531–CR. Argued October 2, 1984.—Decided February 6, 1985.*

(Also reported in 362 N.W.2d 415.)

248

For the defendant-appellant-petitioner there were briefs and oral argument by *Jack E. Schairer,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

WILLIAM A. BABLITCH, J. Lawrence M. Repp seeks review of a decision affirming his conviction of first-degree murder. Repp argues that the trial court erred in refusing to admit psychiatric opinion evidence in the guilt phase (first phase) of his bifurcated trial. The psychiatrist's opinion was that a combination of severe intoxication, multiple personality disorders, and rage created a brief reactive psychosis which caused Repp to lose control and judgment and compelled him to kill his mother. Repp also argues that Wisconsin's bifurcated trial system is unconstitutional under the circumstances of this case because it prohibited him from presenting meaningful intoxication defenses.

Because the psychiatric opinion testimony on the issue of capacity to form intent rested in part on the defendant's mental health history, this testimony is inadmissible. *State v. Flattum,* 122 Wis. 2d 282, 290, 301, 361 N.W.2d 705 (1985). We also hold that the issues raised regarding the constitutionality of Wisconsin's bifurcated trial system have no merit. We therefore affirm the decision of the court of appeals.

On October 7, 1981, at approximately 10:45 a.m. Evelyn Repp went to visit her son Lawrence Repp. She told her husband that she would return by noon. When she had not returned by 9:00 p.m. the following night, her husband Helmuth Repp became concerned and drove to

his son's residence. He observed his wife's car parked in the back of the building. He rang the doorbell and pounded on the doors and windows, but did not get a response. Becoming more concerned, Helmuth returned to his home to find keys to Lawrence's house and to call the police. Police officers met Helmuth at Lawrence's house and followed him inside. Lawrence was there, but denied having seen his mother. The officers looked throughout the house for Evelyn, and eventually found her body on the basement floor. She had died of a gunshot wound to the head and had also suffered numerous bone fractures consistent with "acute blunt trauma." A search of Lawrence's person revealed a loaded .22 caliber derringer gun. A later search by police produced a blood stained baseball bat and other blood stained items.

Lawrence Repp (Repp) was charged with first-degree murder, pursuant to sec. 940.01, Stats., cited below.[1] He pled not guilty and not guilty by reason of mental disease or defect, which pursuant to sec. 971.175, set forth below,[2] required a sequential order of proof.

At the conclusion of the state's case in the guilt phase of the bifurcated trial, defense counsel made a formal offer of proof which consisted of psychiatric testimony

---

[1] "940.01 **First-degree murder.** (1) Whoever causes the death of another human being with intent to kill that person or another is guilty of a Class A felony.

"(2) In this chapter 'intent to kill' means the mental purpose to take the life of another human being."

[2] "971.175 **Sequential order of proof.** When a defendant couples a plea of not guilty with a plea of not guilty by reason of mental disease or defect, there shall be a separation of the issues with a sequential order of proof before the same jury in a continuous trial. The guilt issue shall be heard first and then the issue of the defendant's mental responsibility. The jury shall be informed of the 2 pleas and that a verdict will be taken upon the plea of not guilty before the introduction of evidence on the plea of not guilty by reason of mental disease or defect. This section does not apply to cases tried before the court without a jury."

Dr. Robert Gale would have given regarding the defendant's "intent or capacity to form the intent at the time of the alleged offense." Defense counsel assumed that Dr. Gale was precluded from giving this expert opinion testimony under *Steele v. State,* 97 Wis. 2d 72, 294 N.W. 2d 2 (1980), but made the offer of proof to preserve a defense objection to *Steele* which was the subject of federal litigation at the time. The defense made the following offer of proof in the form of an affidavit:

"Dr. Gale would state that based on his interviews conducted with Lawrence Repp, his overview of medical records, and other collateral materials, it would be his opinion, to a reasonable degree of medical certainty, that a combination of factors were working on Lawrence M. Repp at the date and time of the offense, specifically, as follows:

"As a combination of severe intoxication, (which is established as evident, based on the history of Mr. Repp's drinking, based on his own communications in the medical interviews, review of his medical records, review of the police reports outlining numerous bottles throughout the crime-scene residence, along with the medical records indicating substantial and severe withdrawal symptons), [sic] coupled with the preexisting mental state of Mr. Repp, specifically, mental disease or disorder as outlined in the report of Dr. Gale, dated April 30, 1982, consisting of a set of disintegrating peronality [sic] disorders, among which were a passive-aggressive, a dependent, a borderline, and a schizotypal personality disorder, along with the mental disorders of psychological factors affecting physical condition, and a somatization disorder, which were coupled with an acute rage, from the verbal confrontation with his mother, all, in combination, would have caused Mr. Repp to lose control and judgment. His loss of control and judgment would have compelled Mr. Repp to see himself as threatened, and would have compelled him to act to attempt to destroy the perceived threat to his integrity as a person, however distorted or irrational his perception may have been.

"In addition, one of the results of the combination of the intoxication, the rage, and the disintegration of the

multiple personality disorders, was a brief reactive psychosis, which consisted of substantial mental pain to Mr. Repp, which caused both and contributed to the loss of control and judgment in Mr. Repp, and to a perception of his mother as the source of all the pain he was experiencing; this leading to a compulsion to protect himself, and to alleviate his pain, with him acting at that point to destroy the perceived source of the pain, convinced of the need to protect his own mind by alleviating that pain."

Judge Ness Flores ruled the testimony inadmissible after defense counsel acknowledged that it was introduced "for the purpose of showing or disproving the defendant's capacity to form the requisite criminal intent." The trial court concluded that this testimony was barred under *Steele*.

Repp was found guilty of first-degree murder. No instruction as to either involuntary or voluntary intoxication had been requested or was given to the jury. In the second phase of the trial, the jury found that Repp was not suffering from a mental disease or defect at the time of the crime.

Repp appealed to the court of appeals. In a published opinion the court of appeals affirmed the trial court's exclusion of the proffered testimony. *State v. Repp,* 117 Wis. 2d 143, 342 N.W.2d 771 (Ct. App. 1983). The court held that a psychiatrist may not:

"[o]ffer his opinion as to the effect the intoxication has on that particular defendant's capacity to form the criminal *mens rea.* If the psychiatric testimony takes the form of expert *opinion* testimony 'tending to prove or disprove the defendant's capacity to form the requisite criminal intent,' its admission is barred. *Steele* at 98, 294 N.W.2d at 14." *Repp* at 148.

In reaching this result, the court of appeals concluded that *Steele* overruled *Loveday v. State,* 74 Wis. 2d 503, 247 N.W.2d 116 (1976). *Loveday* held that psychiatric opinion testimony is admissible on the issue of the defendant's capacity to form intent to prove that a defend-

ant's voluntary intoxication negated the requisite criminal intent. *Id.* at 514–15. Having made this determination, the court of appeals did not reach the question of whether the trial court's ruling in this case comported with *Loveday*.

Repp also challenged the constitutionality of Wisconsin's bifurcated trial system, claiming that under the circumstances of this case, he was denied the right to present critical evidence of voluntary and involuntary intoxication and other expert mental state evidence in the first phase of his trial. The court of appeals held that this court had approved the constitutionality of the bifurcated trial system in *Steele*. The defendant subsequently filed a petition for review which was granted by this court.

The issues for review are:

(1) Is an expert opinion of a psychiatrist on the issue of a defendant's capacity to form the requisite intent to kill admissible in evidence in the guilt phase of a bifurcated trial when the opinion is based solely on the defendant's voluntary intoxicated condition? We hold, consistent with *State v. Flattum*, decided on this date, that a psychiatrist who is properly qualified as an expert on the effects of intoxication may give such an opinion but only if that opinion rests solely on the defendant's voluntary intoxicated condition. *State v. Flattum*, p. 296.

(2) Did the trial court properly exclude psychiatric opinion testimony in the guilt phase of Repp's bifurcated trial that a combination of severe intoxication, rage, and multiple personality disorders created a brief reactive psychosis which caused the defendant to lose control and judgment and compelled him to kill his mother? We hold that the trial court properly excluded this psychiatric opinion testimony under *Steele* because the testimony causally linked the defendant's severe intoxication and mental health history with his lack of capacity to form

the requisite criminal intent and is therefore inadmissible.

(3) Did the bifurcated trial system unconstitutionally deprive the defendant of his right to present meaningful intoxication defenses under the circumstances of this case? The constitutionality of Wisconsin's bifurcated trial system was previously upheld in *Steele*. Nothing in the circumstances of this case impinges upon the validity of that decision.

## I.

In *State v. Flattum,* decided on this date, we held that *Steele* did not overrule *Loveday. State v. Flattum, infra,* p. 294. We reasoned that expert opinion testimony from a psychiatrist causally linking a defendant's voluntary intoxication to an inability to form the requisite intent stood on a different evidentiary footing than psychiatric opinion testimony causally linking a defendant's mental health history to an inability to form the requisite intent. *State v. Flattum,* pp. 294–296. We found only the former to be competent. We found the latter to lack reliability and thus, to be irrelevant, incompetent, and not probative. The *Flattum* decision is controlling: a psychiatrist who is properly qualified on the effects of intoxication may give such an opinion in a single phase trial or the guilt phase of a bifurcated trial but only if that opinion rests solely on the defendant's voluntary intoxicated condition. *State v. Flattum,* p. 297.

## II.

We find that the trial court in the instant case properly excluded the psychiatric opinion testimony for two

reasons. The testimony was not restricted to a description of clinical facts about the defendant nor was it restricted to an opinion about how the defendant's intoxication itself negatived the requisite criminal intent. We find that the affidavit, though couched in language less overt than that found objectionable in *Flattum,* gave a psychiatric opinion on the issue of capacity to form intent which rested in part on the defendant's mental health history.

In *Flattum,* the defendant proffered psychiatric opinion evidence, in the form of a hypothetical question, which asked whether a man with Bernard Flattum's history of alcoholism, chronological history, psychiatric profile and physical characteristics who consumed twenty-two cans of beer in a six and one half hour period would be able to form the specific intent to commit first degree murder. *State v. Flattum, infra,* p. 298. The psychiatrist would have answered that he did not think that the defendant could have developed the specific intent to commit murder. *State v. Flattum,* pp. 298, 299. We found that this testimony, resting in part on the defendant's mental health history, clearly went to the issue of capacity to form intent and was properly excluded. *State v. Flattum,* p. 301. The language of the proffered evidence in the instant case, while less explicit, had the same effect.

Psychiatrist Dr. Robert Gale opined that the defendant's severe intoxication, coupled with his mental disorders and rage created a brief reactive psychosis which caused him to lose control and judgment, thus compelling him to kill his mother. We conclude that this opinion was in actuality an opinion that the defendant, due in part to his mental health history, lacked the capacity to form the requisite intent. This conclusion is inescapable given defense counsel's characterization of the evidence. The trial court, in trying to determine the purpose for

which this testimony was offered, engaged in the follow-
ing exchange with defense counsel:

"The court: Now I assume that that's what you were
going to introduce Dr. Gale's testimony for. For the
purpose of showing or disapproving the defendant's
capacity to form the requisite criminal intent; is that
correct Mr. Pieper?
"Mr. Pieper: Correct."

We conclude that the evidence was properly excluded
under *Steele*. We therefore reject the petitioner's argu-
ment that the exclusion of this evidence denied him his
right to present meaningful intoxication defenses as to
both involuntary and voluntary intoxication. Had Dr.
Gale been qualified as an expert on the effects of in-
toxicants and had he limited his testimony to an opinion
that the defendant was intoxicated at the time of the
murder and that this voluntary intoxication negatived
the mental state required to kill, this testimony would
clearly have been admissible under *Loveday*.[3] Had Dr.
Gale limited his testimony to a description of relevant
clinical facts regarding the defendant's mental health
history, this too would have been admissible. *State v.
Flattum, infra,* p. 305. However, by combining the
defendant's severe intoxication with the defendant's
multiple personality disorders and rage and forming an
opinion that these factors caused the defendant to lose
control and judgment, the psychiatrist gave an opinion
on the issue of the defendant's capacity to form intent.
This testimony is inadmissible. As we have stated in
*Flattum* in upholding the exclusion of proffered evi-
dence in that case:

---

[3] We do not reach the issue argued by the petitioner of whether
pathological intoxication is a form of involuntary intoxication
given the defendant's failure to produce sufficient evidence to
raise this defense.

"*Steele* clearly mandated this result, for if psychiatrists are incompetent to assess the effect of a defendant's mental disease or defect on the defendant's capacity to form the requisite intent, they are equally incapable of making this assessment when the additional variable of intoxication is placed into the equation. To permit the introduction of the proffered testimony because one of the variables that went into the psychiatrist's conclusion was the defendant's alcohol consumption would allow the defendant to circumvent the rule of *Steele,* and would strike at the very basis upon which *Steele* stands." *State v. Flattum,* p. 301.

III.

We now turn to the question of whether the bifurcated trial system operated to unconstitutionally deny the defendant his right to present a defense under the circumstances of this case. The petitioner argues that the bifurcated trial system is unconstitutional as applied in this case for a number of reasons. We find that none of these arguments have merit.

First, the petitioner contends that the *Steele* court's exclusion of psychiatric opinion testimony on the issue of the defendant's capacity to form the requisite intent operated to relieve the state of its burden of proof on the element of intent, denying him any meaningful opportunity to challenge the intent element in the guilt phase of his bifurcated trial. *Steele* held that psychiatric opinion evidence on the issue of the defendant's capacity to form intent is inadmissible in the guilt phase of a bifurcated trial if that opinion is based on the defendant's mental health history. *State v. Flattum, infra,* p. 289. The Court of Appeals for the Seventh Circuit concluded that this evidentiary rule met federal due process standards. *Muench v. Israel,* 715 F.2d 1124 (7th Cir. 1983). Therefore, petitioner's argument that the

*Steele* holding denied him any meaningful opportunity to challenge the intent element in the guilt phase of his bifurcated trial has already been considered and rejected by this court. *Steele* at 97. The petitioner has no constitutional right to present evidence which we have found is neither relevant, competent, nor probative. *Id.*

Second, the petitioner contends that the trial court's exclusion of the proffered psychiatric opinion testimony prevented him from presenting a defense as to both voluntary intoxication, pursuant to Sec. 939.42(1), Stats., and involuntary intoxication, pursuant to Sec. 939.42 (2). These sections are set forth below.[4] Specifically the petitioner asserts that the trial court's determination that *Steele* overruled *Loveday* prohibited him from raising a voluntary intoxication defense. This argument is not persuasive for similar reasons as those we have just stated. We have already addressed the question of the propriety of the trial court's exclusion of the proffered evidence in the second section of this opinion. We held that *Steele* does not overrule *Loveday,* and that psychiatric opinion evidence is admissible on the issue of the defendant's capacity to form intent if that opinion is based solely on the defendant's voluntary intoxication. We found that the trial court's exclusion of the proffered testimony in the instant case was proper because the psychiatric opinion was based in part on the defendant's mental health history.

Our review of the record leads us to conclude that the defendant's inability to raise intoxication defenses

---

[4] "**939.42 Intoxication.** An intoxicated or a drugged condition of the actor is a defense only if such condition:

"(1) Is involuntarily produced and renders the actor incapable of distinguishing between right and wrong in regard to the alleged criminal act at the time the act is committed; or

"(2) Negatives the existence of a state of mind essential to the crime."

was entirely a function of defense counsel's failure to adequately introduce either lay evidence or properly qualified psychiatric evidence in admissible form to raise these defenses. The record is devoid of any evidence that demonstrated that the defendant was intoxicated at the time of the homicide. Even if Dr. Gale's testimony had been admitted, he did not opine in his offer of proof or during his testimony in the second phase of the bifurcated trial that the defendant was unable to form the intent to kill due to his intoxication.

■

Additionally, the petitioner asserts that the trial court's failure to admit evidence of involuntary intoxication during the guilt phase of the trial was unconstitutional because it denied him the right to present a common law insanity defense during that phase of his trial. Petitioner argues that he should have been able to present psychiatric opinion evidence as to the effect of his alcohol consumption on his existing mental disorders, which he claims produced a "brief reactive psychosis" which hampered his ability to distinguish between right and wrong. According to the petitioner, such evidence may be sufficient to prove a common law insanity defense during the first phase of a trial. Petitioner claims that this evidence must be admissible during the guilt phase of a bifurcated trial because under our ruling in *State v. Kolisnitschenko*, 84 Wis. 2d 492, 267 N.W.2d 321 (1978), such evidence is precluded during the second phase of a bifurcated trial. This argument also fails.

First, we note that contrary to petitioner's interpretation of *Kolisnitschenko*, such evidence is not inadmissible during the second phase of a bifurcated trial, and in fact substantial testimony as to both the petitioner's intoxication and mental disorders was introduced during the second phase of his trial. *Kolisnitschenko* does not prohibit the introduction of psychiatric opinion evidence as

to the effects of intoxication and mental disorder. *Kolis-nitschenko* simply upheld a jury instruction which states that "a mental disease which is the product of a voluntarily induced state of intoxication by drugs or alcohol or both does not constitute a mental disease which is recognized as a defense by law." *Id.* at 495, 503. The court found that under the circumstances of *Kolisnitschenko,* where the defendant's temporary psychosis was caused by an interaction of a stormy personality and voluntary intoxication and where the psychosis lasted only for the period of intoxication, the evidence was not sufficient to meet the standard for mental disease. *Id.* at 503.

The facts in the instant case are entirely disparate from those in *Kolisnitschenko.* Repp was able to present evidence in phase two of the trial that demonstrated that he had multiple mental disorders that existed for years prior to the murder and that would emerge again unless the defendant received proper psychiatric treatment. Thus, Repp's contention that such evidence must be admissible in phase one of the trial in order to afford him the opportunity to present a defense of common law insanity is without merit given that he was able to fully present his insanity defense in phase two of the trial.

Petitioner submits that he should have been permitted to introduce evidence regarding his brief reactive psychosis, caused by the effects of alcohol on his existing mental disorders, during the guilt phase of his trial. Petitioner characterizes this evidence as evidence of pathological intoxication which he argues is a form of involuntary intoxication. He further argues that involuntary intoxication is a form of common law insanity. Viewing the record in its entirety leads us to conclude that post conviction counsel is substituting a theory of trial defense which was simply not pursued by de-

fense counsel at trial. Dr. Gale did not refer to the condition of pathological intoxication in his affidavit, and did not testify at the second phase of the trial that the defendant suffered from this organic mental disorder. We are therefore unwilling, based on the complete paucity of evidence in the record, to reach the question of whether pathological intoxication is a form of involuntary intoxication, or whether involuntary intoxication is a form of common law insanity. The record simply does not warrant such a review.

The defendant cites *State v. Shaw,* 106 Ariz. 103, 471 P.2d 715 (1970), *cert. denied* 400 U.S. 1009 (1971), *Sanchez v. State,* 567 P.2d 270 (Wyo. 1977), and *State ex rel. Boyd v. Green,* 355 So. 2d 789 (Fla. 1978), all of which held that their state bifurcated trial procedures were unconstitutional. These cases offer no persuasive authority for Wisconsin law. The insanity defense in these jurisdictions is predicated on the belief that an insane person is not able to intend an act. *See Shaw* at 721–23; *State ex rel. Boyd* at 793–94. In Wisconsin a finding of insanity is not a finding of an inability to intend. It is essentially a "moral issue" of "whether or not there should be criminal responsibility. . . ." *Steele* at 96. The *Boyd* court noted this distinction in explaining why its ruling did not implicate Wisconsin's system, stating:

"It is important to note, however, that under Wisconsin law a finding of insanity 'is not a finding of inability to intend; it is rather a finding that under the applicable standard or test, the defendant is to be excused from criminal responsibility for his act.' *State v. Hebard, supra* at 163. Such is not the law in Florida. . . . Wisconsin separates the issue of intent from that of insanity and allows the introduction of all evidence relevant to intent in that portion of the trial in which guilt or innocence is determined." *State ex rel. Boyd* at 793–94.

Similarly we find that the *Sanchez* decision is not persuasive given the great dissimilarity between our state's bifurcated systems. In Wyoming the first phase of a trial concentrated on the defendant's acts, while the second phase of the trial examined the defendant's intent and mental responsibility. In explaining the differences between Wyoming's bifurcated trial system and Wisconsin's system the *Sanchez* court stated:

"We point these distinctions up to underscore the fact that the Wisconsin case law is of no aid to us here for the reasons we have set out above. We would further add that the real distinction between the Wisconsin cases and *Shaw, supra,* is that in Wisconsin the defendant is *excused* from criminal responsibility while in Arizona insanity would *preclude* the elements of intent and thus require a finding of no criminal violation." *Sanchez* at 277.

We find that these cases do not support Repp's contention that Wisconsin's bifurcated trial system is unconstitutional because it excludes psychiatric opinion evidence in the guilt phase of a bifurcated trial on the issue of the defendant's capacity to form the requisite criminal intent based on psychiatric profile. We have found this evidence to be irrelevant, incompetent and to lack probative value. *Steele* at 97.

Finally the petitioner argues that the jury was denied the opportunity to hear relevant state of mind evidence in the guilt portion of the trial as a result of the bifurcated trial system. Our review of the record leads us to conclude that the defendant introduced the following evidence relating to his state of mind: evidence that the defendant had undergone psychiatric treatment at the V.A. Hospital and had previously been hospitalized at Elm Brook and Kettle Moraine Hospitals, evidence that after the defendant's marriage his life style deteriorated and the house he was living in was in a state of disarray,

evidence from the woman who intended to purchase the house where the defendant lived that on her visits, the defendant always appeared tired and disheveled and had cried on several occasions because he was leaving the house, and evidence that the defendant was going to a hospital in Pennsylvania for treatment.

Repp asserts that the jury was not told that he suffered from three other personality disorders and that his mental condition had steadily deteriorated from 1978. Nor, according to the petitioner was the jury told about the following:

"Repp's sexual abuse and unhappiness as a child, his unusual weekly chiropractic visits since 1964, his treatment by two psychiatrists in 1973 and 1974, his obsession with the basement of his house, the explosive rage in 1978 and threats of use of an axe to his ex-wife which caused her to leave after 10 months of marriage, his institutionalization in mental hospitals in 1979, his threatening demeanor to his neighbors and to his cousin, Edith Malak, his odd personal behavior and boarding up his house to keep out the light, his bizarre behavior in the time just before his mother's death and his alcohol withdrawal and hospitalization after his arrest and phone requests to talk to his mother after her death." Brief of defendant-appellant-petitioner, pp. 36–37.

Our review of the record reveals that the trial court never ruled on the admissibility of this evidence. The evidence was simply not offered by the defendant.

We conclude that the issues raised in this appeal regarding the constitutionality of Wisconsin's bifurcated trial system have no merit. The failure of the defendant to offer evidence of intoxication was not due to Wisconsin's bifurcated trial system. The proffered psychiatric opinion evidence was properly excluded.

*By the Court.*—The decision of the court of appeals is affirmed.

STEINMETZ, J. (concurring). I agree with the result of the majority opinion, but I disagree with the majority's recognition of qualified expert testimony on the effect of intoxication on a person's capacity to form the specific intent to commit a crime. I concurred in *State v. Flattum,* no. 83–1142–CR, filed this date, for this same reason. In the *Flattum* concurring opinion I stated:

"In this case, the trial court properly excluded the psychiatrist's testimony of the effect of the defendant's intoxication and his psychiatric history on his capacity to form a specific intent. . . . I write separately because I see no more reliability or trustworthiness in expert testimony based on the defendant's intoxication than that based on the defendant's psychiatric profile. . . .
". . . .
"*Steele* [97 Wis. 2d 72, 294 N.W.2d 2 (1980)] stated: 'What we bar from introduction at the guilt phase of the trial is expert opinion testimony tending to prove or disprove the defendant's capacity to form the requisite criminal intent.' 97 Wis. 2d at 98. I would apply the same bar to expert opinion testimony tending to prove or disprove the defendant's capacity to form the requisite criminal intent when the foundation of such opinion testimony is alcoholic consumption for the same reasons stated in *Steele,* which were: '[W]e have substantial doubt about the competency, relevance, and probativeness of the particular testimony for the purpose of showing diminished capacity to form intent.' *Id.* at 98–99.
". . . .
"The result of the majority opinion will be a contest of alcoholic influence experts in areas where the jury can arrive at its decision by balancing the testimony of the alcohol consumption against the defendant's actions before, after and at the time of the crime as testified to by observers and the defendant himself if he testifies. Under the rule adopted by the majority opinion, we will be confronted by trial court records which will show a marked propensity of those who purport to have alcoholic influence expertise to tailor their testimony to the particular client whom they represent. *(See Steele* at 97 for the statement of dismay as applied to testimony

of psychiatric expertise.) The jury is better equipped to make the decision of the influence of alcohol on the defendant's mental capacity as applied to form a specific intent than it is to determine on the effect of a defendant's psychiatric history on the capacity to form intent. The jury does not need the so-called help of expert hired guns to offer their opinions which are lacking in scientific soundness and especially where there is substantial legal doubt that those opinions have probative value on the point for which they will be asserted.

"....

"*Muench v. Israel*, 715 F.2d 1124 (7th Cir. 1983), stated: 'We therefore hold that a state is not constitutionally compelled to recognize the doctrine of diminished capacity and hence a state may exclude expert testimony offered for the purpose of establishing that a criminal defendant lacked the capacity to form a specific intent.' *Id.* at 1144–45." Concurring op. at pp. 308, 311–315.)

I would reverse *Loveday v. State*, 74 Wis. 2d 503, 247 N.W.2d 116 (1976) directly since I believe it was reversed by implication by *Steele*. I would also affirm in this case but for the reasons stated in this concurring opinion.

I am authorized to state that JUSTICE WILLIAM G. CALLOW and JUSTICE LOUIS J. CECI join this concurring opinion.