In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4160

FELICIA ARIES MORGAN,

Petitioner-Appellee,

v.

KRISTINE KRENKE,

Respondent-Appellant.


Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 96-C-1176--Lynn Adelman, Judge.


Argued September 7, 2000--Decided November 13,
2000


   Before BAUER, POSNER, and EVANS, Circuit
Judges.

   EVANS, Circuit Judge. Early one morning
in October of 1991, 17-year-old Felicia
Morgan and two friends went on a
senseless and incomprehensible 15-minute
crime spree on Milwaukee's north side.
They committed several armed robberies,
motivated by nothing more meaningful than
the desire to steal jewelry or clothing
from a bevy of victims. But robbery
target Brenda Adams did not go quietly.
When Adams refused to give up her leather
trench coat, Morgan shot and killed her.
Morgan then ran off with the coat.

   At her state trial on multiple charges
growing out of these chilling events,
Morgan entered pleas of not guilty and
not guilty by reason of mental disease or
defect pursuant to a Wisconsin procedural
statute, sec. 971.165. Under that
statute, a trial is bifurcated into two
parts. The first deals with guilt and the
second with responsibility.

   Morgan proceeded to trial before a jury
in the Milwaukee courtroom of Circuit
Judge Michael D. Guolee. In the guilt
phase, Morgan was convicted of first

degree intentional homicide while armed, five counts of armed robbery, and one count of attempted armed robbery. In the second phase, the jury rejected her plea of not guilty by reason of mental disease or defect. She was sentenced to a life term on the homicide and assorted other terms on the robberies. The Wisconsin Court of Appeals upheld her convictions (see State v. Morgan, 195 Wis. 2d 388 (1995)) and the Wisconsin Supreme Court denied review. Morgan then filed a habeas corpus petition pursuant to 28 U.S.C. sec. 2254 in the federal district court. The district court granted the petition, adecision the State of Wisconsin now appeals.

In her habeas petition, Morgan claimed that the state trial judge's exclusion of lay and expert opinion testimony regarding her mental condition during the guilt phase of her trial violated her constitutional rights to due process of law, to present a defense, and to testify in her own behalf. Morgan said she suffered from post-traumatic stress disorder and that events just prior to the murder triggered a trance-like state, consistent with PTSD, which cast doubt on whether she had the specific intent to shoot Adams. In granting her habeas petition, the district court parsed her evidence into four categories: expert opinion testimony on the ultimate issue of capacity to form intent; other expert psychiatric testimony that Morgan suffered from PTSD; lay testimony regarding Morgan's "psycho-social history"; and Morgan's own testimony. With the exception of the first, the district court found that exclusion of the evidence violated Morgan's constitutional rights.

To state more precisely what Morgan's claim is requires a brief explanation of Wisconsin's bifurcated trial system, which in one form or another dates back to 1878. The current version, codified at sec. 971.165 Wis. Stat., controls the admission of psychiatric testimony on a defendant's intent to commit a crime. In general, the Wisconsin law sets out a sequential order of proof in which psychiatric testimony regarding a defendant's capacity to form intent is relevant only in the responsibility (second) phase of the trial, not the guilt phase. The precise scope of the

exclusion of psychiatric testimony as to intent has been the subject of a fair number of decisions of the Wisconsin courts and, from time to time, from this court as well. An interesting series of cases reveals the federal-state tension this procedure has provoked. In Hughes v. Mathews, 576 F.2d 1250 (7th Cir. 1987), we held a conviction invalid where psychiatric testimony as to intent was excluded in a single-stage trial. For a short time the Wisconsin Supreme Court went along with us and, in Schimmel v. State, 84 Wis. 2d 287 (1978), applied our rationale to the Wisconsin bifurcated trial system. But just 2 years later, the Wisconsin Supreme Court took a closer look at the issue in Steele v. State, 97 Wis. 2d 72 (1980), and reasserted its former stand excluding psychiatric testimony as to a defendant's capacity to form intent during the guilt (first) phase of a bifurcated trial. We, in turn, reconsidered the issue in Muench v. Israel, 715 F.2d 1124 (7th Cir. 1983), concluding that a state may constitutionally exclude expert testimony offered to show that a defendant lacked the capacity to form specific intent.

Steele, authored by former Chief Justice Nathan S. Heffernan, is Wisconsin's definitive opinion on the issue at hand. Its holding is premised on Wisconsin's skepticism about the reliability of psychiatric opinion evidence offered to show a causal link between a defendant's mental disease and the capacity to form an intent to commit the crime alleged. The court found evidence of that sort to be lacking in trustworthiness and reliability. It is, in Justice Heffernan's words, "neither competent, relevant, nor probative . . . ." 97 Wis. 2d at 97. In other words, in Wisconsin "a finding of insanity is not a finding of an inability to intend." State v. Repp, 122 Wis. 2d 246, 261 (1985). It is important to note that psychiatric evidence is admissible during a trial's responsibility phase where the issue involves more a moral than a legal question; the determination of capacity to form intent in the criminal law sense requires "a fine tuning of an entirely different nature" than that required for the determination of whether or not there should be criminal responsibility: "Whether or not there should be criminal responsibility is essentially a moral

issue." Steele, at 96.

There has been some erosion of the general principle set out in Steele. For instance, psychiatric evidence regarding the capacity to form intent based solely on a defendant's voluntary intoxication is admissible. State v. Flattum, 122 Wis. 2d 282 (1985), reaffirmed that under Steele psychiatric opinion testimony is prohibited on the issue of capacity to form intent when the opinion is based on a defendant's mental health history and restated Wisconsin's skepticism "in the ability of psychiatry to causally link psychiatric disorders to a lack of capacity to form specific intent." At 297. The court concluded, however, that such testimony is admissible if the opinion is based solely on a defendant's intoxicated condition. Nevertheless, exclusion of the testimony was upheld in Flattum because the opinion of the psychiatrist regarding the defendant's capacity to form intent was based on both the defendant's intoxication and his mental health history, which rendered it inadmissible under Steele. Then the court added that psychiatric testimony as to a defendant's mental health history, stopping short of a conclusion regarding a capacity to form intent, could be admissible to cast doubt as a factual matter on whether a defendant had the specific intent to commit the crime alleged. At the same time, the court granted trial judges considerable discretion to evaluate the evidence as to relevance, reliability, and the possibility of prejudice and confusion. See also State v. Repp, 122 Wis. 2d 246 (1985).

Taking heart from Flattum and Repp, Morgan contends that in the guilt phase of her trial she was prevented from introducing admissible evidence regarding her mental health history. In general, her claim is that in the environment in which she grew up, she lived through several traumatic incidents which caused her to suffer from PTSD and Brief Reactive Psychosis. These conditions caused her to "act unintentionally" in killing Adams. She wanted to present expert psychiatric evidence regarding her condition; lay testimony regarding 17 specific incidences of trauma and violence she experienced which trigger symptoms of PTSD, one of which goes back

to an incident when she was 3 years old when her father shot at her mother "because there was too much salt in the gravy"; and her own testimony that she was in a trance-like state of mind when she killed Adams. Morgan contends that, in excluding this evidence, the Wisconsin courts were confused as to the "use of ultimate opinion testimony and the use of causation testimony." In an attempt to clarify the distinction, she says "It was not Felicia Morgan's post-traumatic stress disorder which caused her to unintentionally kill Brenda Adams, but the flashbacks and resulting trance-like states which were unavoidable symptoms of PTSD." Apparently she believes that it might be proper to exclude evidence that the disorder itself made her incapable of forming intent, but not to exclude evidence that the symptoms of the disorder caused her actions to be unintentional. This is a razor-thin distinction, to say the least. In any case, the essence of her argument is that her evidence does not go to the ultimate issue of her capacity to form intent, and therefore its exclusion is not supported by the Steele-Flattum rule. So banning the evidence, Morgan says, violated her constitutional rights to due process, to present a defense, and to testify in her own behalf.

We proceed under sec. 2254 which, even prior to the amendments made to the habeas statute by the Antiterrorism and Effective Death Penalty Act (AEDPA), placed constraints on the issues federal courts may consider when reviewing state convictions. There were limits to our review of state fact-finding set out under the previous version of sec. 2254(d). For instance, when a petitioner has had a "full and fair opportunity" to litigate a Fourth Amendment claim in state court, we will not grant habeas relief on a claim based on an unconstitutional search and seizure. Stone v. Powell, 428 U.S. 465 (1976). And more than ever, after the revisions set out in AEDPA, we must clearly focus on what our role as federal judges is.

As amended by AEDPA, sec. 2254 provides that

(d) [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court

shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

In Williams v. Taylor, 120 S. Ct. 1495 (2000), Justice O'Connor, writing for the court on the meaning of this provision (Justice Stevens' views prevailing as to other issues), said the phrases "contrary to" and "an unreasonable application of" are separate concepts. A state court decision can be "contrary to" Supreme Court precedent if the state court arrives at a conclusion "opposite to that reached by this Court on a question of law." At 1519. It can also be "contrary to" the Court's precedent if "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" the Court's. At 1519. A decision is an "unreasonable application" of Court precedent if "the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." At 1523. Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause,

a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

120 S. Ct. at 1522. See also Anderson v. Cowan, 2000 WL 1310513 (7th Cir. 2000).

In Morgan's case, applying principles from Steele, Flattum, and other Wisconsin cases, the Wisconsin Court of Appeals determined that the exclusion was proper--that Morgan's evidence was not relevant during the guilt phase of her trial nor was it tied to any defense recognized under Wisconsin law. Any alleged fact that she was in a dissociative state was said not to carry with it the automatic supposition that she lacked the specific

intent to kill Adams. Citing Chambers v. Mississippi, 410 U.S. 284 (1973), the court then concluded that exclusion of the evidence at the guilt phase did not deprive Morgan of her constitutional right to present a defense.

Was this conclusion an "unreasonable application" under sec. 2254? To decide, we must first examine Supreme Court precedent, set out both in Chambers and, because Chambers presents a broad general principle, in other cases which involve the right to present a defense. In 1967 the Sixth Amendment right of a defendant to have compulsory process for obtaining witnesses in his favor was found to be incorporated into the Due Process Clause of the Fourteenth Amendment and thus applicable to state criminal trials. Washington v. Texas, 388 U.S. 14 (1967). In Chambers, the Court said that the right of an accused in a criminal trial to due process is essentially the right to a fair opportunity to defend himself. Chambers was arrested for murder, but a fellow named McDonald made and later repudiated a written confession. In addition, McDonald orally admitted the killing on separate occasions to three friends. During his trial, Chambers was blocked from cross-examining McDonald, whom he had called to testify, on the basis of a Mississippi rule that prevented a party from "impeaching" his own witness./1 Chambers was also prevented, on hearsay grounds, from introducing the testimony of the three persons to whom McDonald confessed. The Supreme Court found that the exclusion of evidence, coupled with the denial of cross-examination, denied Chambers a fair trial. Perhaps recognizing that it was approaching territory traditionally left to the states, the Court cautioned that it was not establishing a new principle of constitutional law, nor was it "signal[ling] any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures." 410 U.S. at 302-303.

Neither the rights of the states to define crimes and establish procedures for prosecuting them nor the constitutional rights of defendants in criminal cases are absolute. A defendant's right to present a defense

does not mean he has a right to irrelevant evidence or even relevant evidence which, for instance, is privileged. Taylor v. Illinois, 485 U.S. 400 (1988). On the other hand, the state's well-recognized right to control its criminal code does not mean it has unfettered power. Apprendi v. New Jersey, 120 S. Ct. 2348 (2000). These competing interests often intersect, as they do in Morgan's case.

They also intersected in Montana v. Egelhoff, 518 U.S. 37 (1996). Egelhoff was before the Supreme Court on direct appeal from a Montana criminal conviction. Montana had a law that said a defendant's intoxicated condition could not be admitted to cast doubt on whether he possessed the mental state required as an element of the crime charged. The Montana Supreme Court reversed Egelhoff's conviction, saying that his rights under the Due Process Clause were violated by the statutory exclusion of evidence; the court said he had a right to have the jury consider all relevant evidence to rebut the State's evidence and his intoxicated state was relevant to the issue whether he acted knowingly and purposely. The United States Supreme Court reversed. While noting that Chambers and Crane v. Kentucky, 476 U.S. 683 (1986), say that in the absence of a valid state justification, exclusion of evidence may deprive a defendant of due process, the Court emphasized that a defendant does not have an unfettered right to present evidence, even relevant evidence. Citing Patterson v. New York, 432 U.S. 197 (1977), the Court pointed out that, within reason, states may regulate procedures under which their laws are carried out. Furthermore, the Due Process Clause does not permit federal courts to "engage in a finely tuned review of the wisdom of state evidentiary rules." At 43, quoting Marshall v. Lonberger, 459 U.S. 422 (1983). The Court upheld the Montana law:

The doctrines of actus reus, mens rea, insanity, mistake, justification, and duress have historically provided the tools for a constantly shifting adjustment of the tension between the evolving aims of the criminal law and changing religious, moral, philosophical, and medical views of the nature of man. This process of adjustment has always

been thought to be the province of the States.

At 56, quoting Powell v. Texas, 392 U.S. 514, 535-536 (1968).

In cases like Morgan's, the role of any federal court under sec. 2254 is limited. The issue here is not whether the exclusion of any particular piece of evidence was error in light of Steele, Flattum, and Repp. A state court of appeals said it was not. That is the end of the matter of possible error based on the measuring of the evidence against state law because state, not federal, courts decide these things. And even if there had been an error of Wisconsin law regarding the admission of evidence, it is not our role to correct it. It has never been our job unless the error rises to the level of a constitutional violation. See, e.g., Burrus v. Young, 808 F.2d 578 (7th Cir. 1986). It remains decidedly not our business under AEDPA. No federal court may second-guess a state court's adjudication of an issue simply because we disagree with it. The drastic act of upsetting a judgment entered by another judicial system, after full litigation of the question, "is reserved for grave occasions." Lindh v. Murphy, 96 F.3d 856, 871 (7th Cir. 1996) (en banc), rev'd on other grounds, 521 U.S. 320 (1997). So the only question for us is whether the exclusion of evidence was not just wrong, but whether it was unreasonable to say that it did not violate Morgan's due process right to present a defense.

It is perfectly clear, at least after Egelhoff, that Wisconsin's bifurcated trial scheme itself does not run afoul of Supreme Court precedent--and, in fact, Morgan does not argue that it does. But it is that scheme which makes Morgan's task so difficult. If excluding at least most psychiatric evidence from the guilt phase of a trial is within the power of the State, and if the exclusion of evidence in her case is proper under state law according to a court which has the authority to decide that issue, then Morgan has to argue that despite what the state court said, the exclusion of evidence in her case was nevertheless so serious as to violate her right to present a defense, a defense which attempts to cast doubt on the existence

of specific intent by using evidence the State says is not relevant as to that element. Morgan does not, in our view, successfully jump over the state-law fence which surrounds her. What she is arguing is, in reality, a state law claim. It is that somehow in her case the evidence should have been admitted through a door left sightly ajar in Flattum.

Even were the state law issue our business, we would not agree with Morgan that the state trial judge's barring of the evidence was error under state law. Despite the fact that Wisconsin remains skeptical of psychiatric evidence, Morgan contends that her evidence was different from that prohibited by Steele. However, when one looks at her proffered evidence as a whole, it really adds up to something very much like opinion evidence on capacity to form intent. There would be testimony about the nature of PTSD-- that it is caused by traumatic incidents and that traumatic events may cause flashbacks, trance-like states, etc., in which a person might act unintentionally. That testimony would be coupled with testimony that Morgan's life was filled with traumatic incidents and her own testimony that when she killed Adams she was in a trance-like state. Her evidence differs only subtly from psychiatric evidence that she lacked the capacity to form intent. It is not at all clear that Morgan's evidence is more like that possibly admissible under Flattum than that which is clearly precluded by Steele. In addition, Flattum made it very clear that the trial judge retains considerable discretion in evaluating psychiatric evidence.

It is obvious that Judge Guolee, the state trial judge, wrestled with Morgan's proffer, cited appropriate case law, and ultimately determined that, given Wisconsin's skepticism about psychiatric testimony, much of Morgan's evidence should be excluded. He showed concern for Morgan's right to present a defense, but he also correctly noted that normally a defendant must rely on a recognizable de fense--that there are "certain parameters as to defenses." He referred to the struggle the Wisconsin appellate courts have had in evaluating psychiatric testimony and their conclusion that such testimony often goes to a moral issue,

which is the relevant inquiry in the second stage of a bifurcated trial. As to whether an expert might be allowed to testify to matters stopping short of the ultimate issue of capacity to form intent, the judge recognized the very "real dilemma" for a court in drawing and enforcing the boundaries between the two types of evidence. He then made clear that Morgan's own testimony was relevant as to what she was doing at the moment of the killing and why she "closed her eyes," for instance. When pressed as to whether he was excluding entirely the other lay testimony about the 17 incidents of trauma, he said, "That's pretty broad." He said he was excluding "irrelevant social testimony" but that he could not "anticipate what that would be," thus leaving the door open to some testimony, the precise contours of which would be determined as the evidence was presented. It was this ruling that the Wisconsin Court of Appeals affirmed. Even if it were our role to agree or disagree with this conclusion, we cannot say the court made the wrong call. And that's what it means to give "discretion" to the trial judge on evidentiary calls.

As an aside, we note that Morgan would have placed a very heavy burden on the trial were she allowed to present 17 separate incidents of past traumatic incidents, some dating back to when she was a little girl. For instance (according to her pretrial submissions), she wanted to offer, through testing of friends and family, that when she was "four to six years old, [she] witnessed her mother and father regularly dine with loaded revolvers at their sides during family dinners so that neither one would be unprotected from the violent outbursts of the other." She also wanted to show that her "cousin was shot in a 1988 street fight and subsequently lost the use of her arm" and that her mother "shot a man, in front of Morgan, because he was molesting Morgan while giving her a bath." We mentioned earlier that she also wanted to offer evidence that when she was only 3 years old, her father shot her mother "because there was too much salt in the gravy."

Unless Morgan assumed the State would just sit back and listen to all this testimony without investigating its accuracy, she was in effect asking the

trial judge to hold 17 mini-trials on collateral events, some of which were far outside any conceivably relevant time period.

With that detour into Wisconsin law (which is not really our business) out of the way, we finally arrive at what is our business. We must decide whether it is unreasonable, given what the Supreme Court has said, for the Wisconsin Court of Appeals to conclude that the exclusion of Morgan's evidence did not deprive her of her right to present a defense. The exclusion of evidence of intoxication in Egelhoff, evidence which was offered to cast doubt on whether the defendant's actions were taken knowingly and purposely, is closely analogous to the exclusion of psychiatric evidence on the issue of specific intent. As we have already said, it is more than reasonable to conclude that under Egelhoff, Wisconsin's exclusion of psychiatric evidence during the guilt phase of a bifurcated trial does not violate a defendant's rights. There can be no misunderstanding the Wisconsin Supreme Court's mistrust of such evidence. That mistrust, as Justice Heffernan clearly set out in Steele, is grounded in a belief that the causal link is not sufficiently strong between a mental disease and a defendant's state of mind at the precise moment a crime is committed. Furthermore, it seems likely that the Wisconsin courts might very well find PTSD evidence less, rather than more, reliable than evidence of other mental conditions. According to Morgan, the relevant symptoms of PTSD, such as the trance-like state, are not persistent, but rather are triggered by specific events. For instance, Morgan does not claim that she was suffering from PTSD during the entire 15-minute crime spree, but only at the moment she pulled the trigger and shot Adams. It would require a good deal of precision to determine just when the PTSD kicked in. We think it is not an unreasonable application of United States Supreme Court precedent to conclude that Wisconsin can exclude psychiatric testimony as irrelevant in the first stage of the trial, and further that the exclusion of evidence in Morgan's case did not violate her constitutional rights.

In sum, precedent tells us that in appropriate instances, the exclusion of evidence violates a defendant's right to present a defense. But the defendant's right to present evidence is not absolute, and the exclusion of even relevant evidence does not automatically create a Due Process violation. We also know that the states retain the right, also not absolute, to establish procedures for running its criminal trials. At the present time, for Wisconsin to exclude psychiatric testimony on the capacity to form intent is within its power. That means that many defendants who have mental diseases, which some might think would cast doubt on their ability to form the intent necessary to commit a crime, can be precluded from presenting that testimony during the guilt phase of their trials. The exclusion in Morgan's case is well within the norm and does not rise to the level of a constitutional violation.

We have framed our analysis in terms of Morgan's right to present a defense. The right to present a defense includes a right to testify on her own behalf. Rock v. Arkansas, 483 U.S. 44 (1987). Morgan also seems to make a claim that she was prevented from testifying. The claim is not supported by either common sense or the record. The state trial judge did not prevent Morgan from testifying. He indicated that there could be testimony regarding what Morgan did at the time of the shooting: "[S]he closed her eyes, that's a fact that can be brought out." Additionally, she could testify as to why she closed her eyes: "Why she closed her eyes, what she was doing during those facts is a fact." If, in reality, the trial judge had prevented Morgan from testifying, common sense tells us we would not now be tangled up in Wisconsin's esoteric bifurcation procedure. Any attorney would have raised, starkly and with emphasis, the fundamental issue regarding her right to testify. If Morgan had been prohibited from testifying entirely, the Wisconsin Court of Appeals would certainly have ordered a new trial. Rather, the court of appeals never even considered the issue-- more than likely because it was not raised. If by some chance the case got to us before some other court corrected the error, we would waste no time finding that a decision upholding her conviction

was "contrary to" established Supreme Court precedent.

But to be charitable, although Morgan says in her brief with us that she was prohibited from testifying, her argument is, in fact, that the exclusion of the other testimony "effectively precluded" her from testifying, another issue not presented to or considered by the Wisconsin Court of Appeals.

We will briefly discuss the issue despite a possible problem regarding the exhaustion of state remedies on this subset of Morgan's primary claim. No doubt sensing that the jury might be skeptical about her testimony that she was in a trance or did not know what she was doing, Morgan wanted to present the whole package:  the testimony that she had PTSD; the symptoms of PTSD that, for instance, a sufferer may experience trance-like states; and lay testimony about traumatic experiences (the 17 incidents) and Morgan's behavior. With that testimony as a base, she hoped that her own testimony that she suffered a trance-like state at the time of the murder would gain a measure of credibility. That's why, when she was not allowed to present the base, she claims she was "effectively precluded" from testifying. To that we say two things. She has no right to present evidence which is irrelevant in order to bolster her own testimony. And it is not unusual for defendants in criminal cases to be "effectively precluded" from testifying. A defendant with a nasty criminal record, for instance, may make a strategic decision that it is better to remain silent than to let the jury find out too much about him. He is effectively precluded from testifying, but his constitutional rights are not violated.

For all these reasons, the judgment of the district court granting Morgan's petition for a writ of habeas corpus is

REVERSED.

/1
Not much is left of the hoary rule against "impeaching" one's own witness, a rule that has been discredited as a remnant of the old "voucher" rule (with "oath-takers" summoned to support

one's case) under primitive English trial prac-
tice.