STATE of Wisconsin, Plaintiff-Respondent,

v.

Bernard Charles FLATTUM, Defendant-Appellant.†

Court of Appeals

*No. 83–1142–CR. Submitted on briefs December 5, 1983.—*
*Decided February 21, 1984.*
(Also reported in 346 N.W.2d 787.)

For the appellant the cause was submitted on the briefs of *Ruth S. Downs,* assistant state public defender.

---

† Petition to review granted.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *David J. Becker,* assistant attorney general.

Before Foley, P.J., Dean and Cane, JJ.

CANE, J. Bernard Flattum appeals a judgment convicting him of first-degree murder in the strangulation and knifing death of Margaret Wink. The sole issue on appeal is whether the trial court erred in excluding psychiatric opinion testimony that a person with Flattum's psychiatric and alcohol abuse profile would not be able to form the specific intent to commit first-degree murder.

Flattum contends that the testimony was necessary to show his state of mind at the time of the murder and that its exclusion was a violation of his constitutional due process right to present a defense. Because psychiatric opinion testimony is not competent to prove or disprove a defendant's capacity to form the specific intent to commit first-degree murder, we affirm.

Flattum does not dispute the sufficiency of the evidence to support the jury's conclusion that he caused Wink's death. The primary factual issue at trial was whether Flattum was so intoxicated he could not have formed the specific intent to commit the crime.

Flattum testified that after drinking about twenty-two twelve-ounce cans of beer, he stopped at Wink's home. Wink was an elderly woman, and Flattum knew her from having previously worked with her and from saying hello to her on occasions when he passed her home. He testified that he was drunk at the time and his memories of the day's events were vague. He does recall drinking two or three more beers at her home and having a discussion about his young son. Flattum recalls that after using the bathroom, he found Wink lying on the floor with

blood on her. Other witnesses testified about Flattum's alcoholism and their observations of him that day.

The defense expert witness, Dr. Carl Schwartz, testified about the effects of alcohol consumption on the brain and on the thinking and motor response of an individual. He also stated that, in his opinion, if a man five feet eleven inches tall, weighing 160 pounds, consumed twenty-two twelve-ounce cans of beer over a six and one-half hour period, he would be intoxicated. He further testified that, in his opinion, if the same man in the next five hours consumed another eight cans of beer, his intoxication level would be at least the same as after consuming twenty-two cans of beer in six and one-half hours.

The trial court permitted Dr. Schwartz to describe the effects of alcohol and intoxication, but excluded his testimony when asked the following hypothetical question:

Doctor, Wisconsin law defines first degree murder as being committed by one who causes the death of another human being with the intent to kill that person. The intent to kill is defined by Wisconsin law as the mental purpose to take the life of another human being. Relying on the definitions, Doctor, I ask you to assume the following facts for purposes of this hypothetical question: assume that a man has a longstanding history of alcoholism which is currently diagnosed as being in a chronic phase. Assume further that this man has a chronological history identical to that of Bernard Flattum's. Assume further that this man has a psychiatric history. Identical to that of Bernard Flattum's. Assume further that this man is five feet, eleven inches tall and weighs a hundred sixty pounds. Assume further that on a particular day, he consumes no food, but does consume twenty-two cans of beer from eight a.m. until two thirty p.m. Assuming all of those facts to be true, do you have an opinion to a degree of medical certainty as to whether this man would be able to form the specific intent to commit murder as it has been defined for you?

Flattum contends that the trial court erred by excluding the psychiatric opinion evidence offered to show that he lacked the state of mind necessary to commit first-degree murder. He cites *Loveday v. State,* 74 Wis. 2d 503, 247 N.W.2d 116 (1976), and *Roe v. State,* 95 Wis. 2d 226, 290 N.W.2d 291 (1980), for the proposition that expert opinion testimony is generally admissible at trial on the question of whether a defendant was intoxicated to such an extent that he did not have the capacity to form the specific intent necessary to commit the crime charged. On the other hand, the state contends that *Loveday* and *Roe* must be read in light of *Steele v. State,* 97 Wis. 2d 72, 95, 294 N.W.2d 2, 13 (1980), which holds that while psychiatric opinion testimony is relevant and competent to make the "gross evaluation" of whether the defendant is sane, or of sufficiently sound mind to be criminally responsible, it is not relevant or competent for the "fine tuning" necessary to determine whether an alleged offender intended to do, in the sense of criminal law, what he in fact did.

To establish a voluntary intoxication defense, there must be some evidence to show that the defendant's mental faculties were so overcome by intoxicants that he was incapable of forming the specific intent to kill. *State v. Strege,* No. 82–1710, slip op. at 10–11 (Wis. Jan. 31, 1984). When Flattum claims the psychiatric opinion testimony was necessary to show his state of mind at the time of the offense, he is essentially saying that the testimony would have somehow affected the "intent" element of the first-degree murder charge. *See State v. Repp,* No. 83–531–CR, slip op. at 4–5 (Wis. Ct. App. Dec. 27, 1983). When *Steele* prohibited expert opinion evidence on the capacity to form intent, it excluded the admission of all expert psychiatric opinion evidence on whether the de-

fendant did in fact form the intent to kill. *Steele,* 97 Wis. 2d at 97–98, 294 N.W.2d at 13–14.

Although Wisconsin has accepted scientific opinion testimony on many subjects, it has also rejected the competency of expert opinion testimony in such areas as the polygraph and now psychiatric opinion testimony dealing with the probabilities of whether a defendant in fact intended to commit the alleged act. Wisconsin may exclude such evidence without infringing on a defendant's constitutional right to present reliable evidence in his own defense. *Muench v. Israel,* 715 F.2d 1124, 1143–45 (7th Cir. 1983).

The trial court correctly admitted some of the psychiatric opinion testimony during the trial. As recognized in *Repp* and *Strege,* expert opinion testimony is admissible on areas such as a defendant's alcoholic condition and history, the effects of alcohol use and abuse, and the likely effect of alcohol on a person of the defendant's size or with the defendant's alcohol use history. What a psychiatrist may not do, however, is to offer his opinion as to whether the defendant intended to do what he in fact did. *Steele,* 97 Wis. 2d at 98, 294 N.W.2d at 14. This is exactly what the hypothetical question intended to elicit in this case. The trial court therefore properly excluded Dr. Schwartz's opinion testimony as to whether a hypothetical person with Flattum's psychiatric and intoxicated profile would be able to form the specific intent to commit first-degree murder.

*By the Court.*—Judgment affirmed.