STATE of Wisconsin, Plaintiff-Respondent,

v.

Bernard Charles FLATTUM,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 83–1142–CR. Argued October 2, 1984.—
Decided February 6, 1985.*

(Also reported in 361 N.W.2d 705.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Ruth S. Downs*, assistant state public defender.

For the plaintiff-respondent the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

WILLIAM A. BABLITCH, J. Bernard C. Flattum seeks review of a decision affirming his conviction of first-degree murder. Flattum argues that the trial court violated his constitutional right to present a defense by: (1) prohibiting a psychiatrist from giving his expert opinion that a person with Flattum's mental health history who had consumed as much alcohol as Flattum had would be incapable of forming the requisite intent to kill; and (2) prohibiting the admission of mental health history evidence. We hold that although mental health history testimony is admissible on the issue of intent if it is relevant, psychiatric opinion testimony on the issue of the defendant's capacity to form an intent to kill which rests in part on the defendant's mental health history is inadmissible. We affirm the court of appeals.

Although Flattum was not tried in a bifurcated trial, Wisconsin statutes allow a defendant to couple a plea of not guilty with a plea of not guilty by reason of mental disease or defect, which pursuant to sec. 971.175, Stats., cited below,[1] requires a sequential order of proof. This opinion does not address issues regarding the admissibility of psychiatric testimony in the mental responsibility phase (the second phase) of a trial.

---

[1] "**971.175 Sequential order of proof.** When a defendant couples a plea of not guilty with a plea of not guilty by reason of mental disease or defect, there shall be a separation of the issues with a sequential order of proof before the same jury in a continuous trial. The guilt issue shall be heard first and then the issue of the defendant's mental responsibility. The jury shall be informed of the 2 pleas and that a verdict will be taken upon the plea of not guilty before the introduction of evidence on the plea of not guilty by reason of mental disease or defect. This section does not apply to cases tried before the court without a jury."

The primary factual issue contested at trial was whether Flattum was so intoxicated at the time of the murder that he did not have the capacity to form the specific intent to commit the crime. Flattum testified that on the morning of June 7, 1982, from 8:00 a.m. to approximately 1:30 p.m., he drank twenty twelve-ounce cans of beer. At approximately 1:40 p.m. he went to his son's day care center and attempted to see him. His son was not outside, so he decided to stop at Margaret Wink's home, knowing that the day care center was visible from her house. He did so sometime between 1:40 p.m. and 2:30 p.m. Wink was an elderly woman whom Flattum had known from previously working with her and from saying hello to her on several occasions when he passed by her home. Flattum testified that he was drunk when he arrived at Wink's home and that his memories of the day were vague. He did remember that he drank two or three more beers while there. He recalls asking to use the bathroom and coming out of the bathroom to find Wink bloody and lying on the floor. She had been strangled and stabbed to death. Other witnesses testified about Flattum's alcoholism and their observations of his intoxicated state on that day.

Testimony concerning Flattum's intoxicated state was controverted in part by Flattum's housemate who found only eight empty cans of beer in Flattum's home. In addition, others testified that Flattum did not seem "out of the ordinary" shortly after the time of the murder.

The defense intended to introduce the testimony of expert witness Dr. Carl Schwartz, a psychiatrist, to prove that the defendant's voluntary intoxication rendered him unable to form the specific intent to commit first-degree murder. Judge Bartholomew, concerned about the use of psychiatric opinion testimony as it related to Flattum's ability to form intent, screened Dr. Schwartz's

testimony in chambers. Dr. Schwartz testified that he had conducted a series of psychiatric tests on Bernard Flattum to assess Flattum's personality, IQ, and thinking ability. On the basis of these tests, Dr. Schwartz concluded that Flattum was a paranoid alcoholic with pathologic violence. The defense then asked Dr. Schwartz in chambers the following hypothetical question:

"Doctor, Wisconsin law defines first degree murder as being committed by one who causes the death of another human being with the intent to kill that person. The intent to kill is defined by Wisconsin law as the mental purpose to take the life of another human being. Relying on the definitions, Doctor, I ask you to assume that the following facts for purposes of this hypothetical question: assume that a man has a longstanding history of alcoholism which is currently diagnosed as being in a chronic phase. Assume further that this man has a chronological history identical to that of Bernard Flattum's. *Assume further that this man has a psychiatric history.* [*sic*] *Identical to that of Bernard Flattum's.* Assume further that this man is five feet, eleven inches tall and weighs a hundred sixty pounds. Assume further that on a particular day, he consumes no food, but does consume twenty-two cans of beer from eight a.m. until two thirty p.m. Assuming all of those facts to be true, do you have an opinion to a degree of medical certainty as to whether this man would be able to form the specific intent to commit murder as it has been defined for you? (Emphasis added.)

Dr. Schwartz answered in the affirmative and stated that in his opinion, this hypothetical man would not be able to develop the specific intent to commit murder. The trial court ruled this testimony inadmissible.

The court did, however, allow Dr. Schwartz to testify at trial about the effects of alcohol consumption on the brain and thinking and motor response of an individual. Dr. Schwartz also testified that if a man five-feet-eleven inches tall, weighing 160 pounds, consumed no food but

consumed twenty-two twelve-ounce cans of beer over a six and one-half hour period, that man would be intoxicated.

Jury instructions covering first-degree murder, pursuant to sec. 940.01, Stats., second-degree murder, pursuant to sec. 940.02, and voluntary intoxication as a defense, pursuant to sec. 939.42(2) were given. These sections are set out in full below.[2] The jury found the defendant guilty of first-degree murder.

Flattum appealed to the court of appeals. In a published opinion, the court of appeals affirmed the trial court's ruling, holding inadmissible "all expert psychiatric opinion evidence on whether the defendant did in fact form the intent to kill" including that which rests solely on the defendant's intoxication. *State v. Flattum*, 118 Wis. 2d 108, 111–12, 346 N.W.2d 787 (Ct. App. 1984). In reaching this result, the court of appeals implicitly held that this court's holding in *Steele v. State*, 97 Wis. 2d 72, 294 N.W.2d 2 (1980), overruled *Loveday v. State*, 74 Wis. 2d 503, 247 N.W.2d 116 (1976). *Loveday* held that psychiatric opinion testimony on the issue

---

[2] "940.01 **First-degree murder.** (1) Whoever causes the death of another human being with intent to kill that person or another is guilty of a Class A felony.

"(2) In this chapter 'intent to kill' means the mental purpose to take the life of another human being."

"940.02 **Second-degree murder.** Whoever causes the death of another human being under either of the following circumstances is guilty of a Class B felony:

"(1) By conduct imminently dangerous to another and evincing a depraved mind, regardless of human life; or

"(2) As a natural and probable consequence of the commission of or attempt to commit a felony."

"939.42 **Intoxication.** An intoxicated or a drugged condition of the actor is a defense only if such condition:

". . .

"(2) Negatives the existence of a state of mind essential to the crime."

of the defendant's capacity to form intent is admissible when that opinion is based solely on the defendant's voluntary intoxicated condition. *Id.* at 514–15. Having made this determination, the court of appeals did not reach the question of whether the trial court's ruling in this case comported with *Loveday*. The defendant subsequently filed a petition for review which was granted by this court.

The issues for review are:

(1) Is an expert opinion of a psychiatrist on the issue of a defendant's capacity to form the requisite intent to kill admissible in a single phase trial if that opinion rests solely on the defendant's voluntary intoxicated condition? We hold that *Steele* did not overrule *Loveday* and that a psychiatrist who is properly qualified as an expert on the effects of intoxication may give such an opinion but only if that opinion rests solely on the defendant's voluntary intoxicated condition.[3]

(2) Did the trial court properly exclude the psychiatric opinion testimony on the issue of Flattum's intent to kill? We hold that a psychiatrist may not give his or her opinion on the issue of capacity to form intent if that opinion rests in whole or in part on the defendant's mental health history. The trial court properly excluded the proffered psychiatric opinion testimony on the issue of the defendant's capacity to form intent because such testimony was based in part on Flattum's mental health history.

(3) Is mental health history evidence admissible, if relevant, to prove or disprove the defendant's capacity

---

[3] The question of whether a psychiatrist who is properly qualified as an expert on the effects of intoxication may give an opinion as to whether a defendant's involuntary intoxication rendered the defendant incapable of distinguishing between right and wrong in regard to the alleged criminal act at the time the act was committed is not presented by the facts of this case and is not therefore before us.

to form intent? We hold that such evidence, if relevant, is admissible.

Because *Steele* has often been misconstrued and questions have been raised regarding its holding, a review of both the scope and the basis of the *Steele* decision is in order. A review of *Steele* will, in addition, provide a better understanding of the issues raised in this appeal.

In *Steele,* this court concluded that psychiatric opinion testimony which tends to prove or disprove intent is "neither competent, relevant, nor probative. . . ." *Steele* at 97. The *Steele* decision was a narrow one: it barred psychiatric opinion testimony on the issue of capacity to form intent if that opinion is based on a defendant's mental health history.

In *Steele,* the defendant pled not guilty and not guilty by reason of mental disease or defect to the state's charge of first degree murder. *Id.* at 74. During the guilt phase (the first phase) of his bifurcated trial, the defendant was prohibited from introducing psychiatric opinion testimony that because of his mental health history he was unable to form the intent to kill. This evidence was "the type of evidence associated with the causative doctrine that because of mental disease or defect, the defendant, in the opinion of experts was unable to intend, or lacked the capacity to intend, to commit a specific crime." *Id.* at 87–88.

*Steele* considered the propriety of the trial court's exclusion of this causative opinion evidence, framing the issue for review as follows: "Is expert evidence in respect to mental capacity to form an intent to kill admissible in the guilt phase of a bifurcated trial for first degree murder." *Id.* at 76. We held that this testimony was inadmissible and that a psychiatrist is barred from giving his or her opinion on the issue of the defendant's capacity to form intent if that opinion is based on the defendant's mental health history.

We reach this result by concluding that psychiatric opinion evidence which causally links a defendant's mental disease or defect with his or her capacity to form intent lacked "trustworthiness and reliability" and was therefore "neither competent, relevant, nor probative for the purpose asserted in the instant case." *Id.* at 97.

We explicitly rejected the seventh circuit's conclusion in *Hughes v. Mathews,* 576 F.2d 1250, 1256–58 (7th Cir. 1978), that psychiatric opinion evidence is relevant and competent as to the capacity to form intent. *Steele* at 94. In a well reasoned explanation of why this court rejected that conclusion, Justice Heffernan, writing for the majority, stated:

"Basically, the United States Court of Appeals in *Hughes* confused the purpose for which psychiatric testimony is relevant and competent, in some instances, with those in which its competency, relevancy, usefulness, and probativeness is highly suspect. The determination of capacity to form an intent—to find whether or not the alleged offender intended to do, in the sense of the criminal law, what he in fact did—requires a fine tuning of an entirely different nature than that required for the admission of evidence on the general question of insanity for the determination of whether or not there should be criminal responsibility.

"Whether or not there should be criminal responsibility is essentially a moral issue. Is it just, in light of the ethics and standards of our society, to hold a person who is insane accountable for what has been done. To make that determination requires no fine tuning. It is, rather, a gross evaluation that a person's conduct and mental state is so beyond the limits of accepted norms that to hold him criminally responsible would be unjust. This is a far cry from accepting testimony which purports to prove or disprove a specific intent, as distinguished from criminal responsibility. While some courts may have blind faith in all phases of psychiatry, this court does not. There is substantial doubt whether evidence such as was sought to be introduced here is scientifically sound, and there is substantial legal doubt that it is probative

on the point for which it was asserted in this case." *Id.* at 96–97.

Our conclusion in *Steele* that psychiatric opinion testimony on the issue of the defendant's capacity to form intent is unreliable when that conclusion is based on a defendant's mental health history is clearly borne out by the literature in the area. *See* Fosdal, *Diminished Capacity, Intent and Psychiatric Testimony,* 52 Wis. B. Bull. 17 (April 1979); Dickey, Remington & Schultz, *Law, Trial Judges, and the Psychiatric Witness—Reflections on How a Change in Legal Doctrine Has Been Implemented in Wisconsin,* 3 Int'l J. of L. & Psychiatry 331, 340–41 (1980); Arnella, *The Diminished Capacity and Diminished Responsibility Defenses: Two Children of a Doomed Marriage,* 77 Colum. L. Rev. 827, 846 (1977).

Perhaps the most fundamental problem with the admission of psychiatric opinion evidence on the question of the defendant's capacity to form the requisite intent when that opinion is based on the defendant's mental health history is the inconsistency between the law's conception of intent and the psychiatric community's understanding of the term. As one commentator has noted:

"Mental health personnel are likely to use the word 'intent' in a different sense than the substantive criminal law uses it. Their tendency is to use it to describe the drive or impulse underlying and 'causing' the state of mind and the behavior rather than the state of mind itself. . . ." Dix, *Mental Illness, Criminal Intent, and the Bifurcated Trial,* 1970 L. & Soc. Order. 559, 565 (1970).

*See* Dix, *Psychological Abnormality as a Factor in Grading Criminal Liability: Diminished Responsibility, and the Like,* 62 J. Crim. L., Criminology & Police Sci., 313, 320, 325 (1971); Arnella, *supra* at 833; Note, *Criminal Law*

*—First-Degree Murder—Psychiatric Testimony Admissible on Issue of Intent,* 1979 Wis. L. Rev. 628, 643 (1979).[4]

We conclude that the *Steele* court's prohibition of psychiatric opinion testimony on the issue of the defendant's

[4] These commentators corroborate the experience of this court, and indeed the experience in this case. The psychiatric testimony in the instant case amply demonstrates the lack of congruence between what the law and psychiatry mean by intent. In explaining his conclusion that defendant Flattum could not have developed the specific intent to commit murder, psychiatrist Dr. Carl Schwartz stated:

"A killing is not the same as murder. They're very far apart. Especially in this day and age and especially with the law. Killing and murder are very different apart. And so the pathological rage with the urge to kill is very different from an intentional act. A deliberate act to murder. These are very, very far apart subjects."

Dr. Schwartz's conclusion suggests that one could not intentionally kill if his or her actions were due to a "pathological rage with an urge to kill. . . ." However, it is clear that the existence of pathological rage coupled with an urge to kill is not necessarily inconsistent with the existence of first-degree murder. First, the "urge to kill" may adequately fulfill the intent to kill element of the crime. Second, pathological rage may accelerate the formation of intent to kill. *See Curl v. State,* 40 Wis. 2d 474, 485, 162 N.W. 2d 77 (1968).

The literature demonstrates that there may be a direct relationship between a mental abnormality such as pathological rage, and the formation of intent. Dr. Frederick Fosdal has explained this relationship as follows: "In my experience, a direct relationship between diminished capacity and intent is much more common than an inverse relationship. That is, these various causes of mental impairment or diminished capacity render individuals capable of committing unlawful acts much more often than they prevent or negate the formation of intent." Fosdal, *supra* at 22. Dr. Schwartz's testimony raises significant doubt about whether he understood the term "intent to kill", as used in sec. 940.01(2), Stats. *See also* Dickey, Remington, & Schultz, *supra* at 334–37 for additional psychiatric opinion evidence as to intent to kill offered in other Wisconsin criminal proceedings.

capacity to form intent when that opinion is based on a defendant's mental health history is clearly appropriate. We prohibited such testimony because, as the literature bears out, psychiatric opinion which purports to causally link a defendant's mental health history with a lack of intent is unreliable.

Having reviewed the holding and rationale of *Steele*, we now turn to the issues for review.

## I.

*IS AN EXPERT OPINION OF A PSYCHIATRIST ON THE ISSUE OF A DEFENDANT'S CAPACITY TO FORM THE REQUISITE INTENT TO KILL ADMISSIBLE IN A SINGLE PHASE TRIAL IF THAT OPINION RESTS SOLELY ON THE DEFENDANT'S VOLUNTARY INTOXICATED CONDITION?*

The court of appeals, citing *Steele*, held that "all expert psychiatric opinion evidence on whether the defendant did in fact form the intent to kill" including that grounded solely on the defendant's intoxication, is inadmissible. *Flattum* at 111–12. Both Flattum and the State, however, argue that the court of appeals was in error. We conclude that a psychiatrist, who is properly qualified as an expert on the effects of intoxication, may give his or her expert opinion on the issue of a defendant's capacity to form the requisite intent to kill. However, he or she may do so only if that opinion is based solely on the defendant's voluntary intoxicated condition.

The court of appeals, in reaching the result it did, implicitly concluded that *Steele* overruled *Loveday*. That is incorrect. The court's conclusion rests upon a broader interpretation of *Steele* than we are willing to give it.

As discussed above, the *Steele* decision is a narrow one, barring psychiatric opinion testimony on the issue of capacity to form intent when that opinion is based on

a defendant's mental health history. The psychiatric opinion testimony that was found to be objectionable in *Steele* had nothing whatsoever to do with intoxication. Similarly the psychiatric testimony that was excluded in *State v. Hebard,* 50 Wis. 2d 408, 184 N.W.2d 156 (1971), *Sprague v. State,* 52 Wis. 2d 89, 187 N.W.2d 784 (1971), and *State v. Anderson,* 51 Wis. 2d 557, 187 N.W.2d 335 (1971), cases upon which the *Steele* decision was based, dealt exclusively with the question of whether a defendant's mental disease or defect caused that defendant to lack the capacity to form intent. Thus, the *Steele* decision is not controlling on the question of whether psychiatric opinion testimony which purports to causally link a defendant's intoxication to a lack of capacity to form the requisite intent is admissible. The *Loveday* decision is dispositive of this question.

In *Loveday,* the trial court barred two psychiatrists from giving their opinion that the defendant's voluntary intoxicated condition negated the state of mind essential to commit first degree murder. *Loveday* at 513. We concluded that no valid reason had been presented for the exclusion of this testimony. *Id.* at 514–15. The *Loveday* rule was restated by this court in *Roe v. State,* 95 Wis. 2d 226, 290 N.W.2d 291 (1980), when we held that "[e]xpert testimony as to whether the defendant was intoxicated to such an extent that he did not have the capacity to form the intent necessary to commit the crime charged is generally admissible at trial." *Id.* at 237.

The *Steele* case does not overrule *Loveday.* In *Loveday,* the psychiatrists had made no attempt to link any additional underlying facts regarding the defendant's mental health history as a basis for their opinions. The *Steele* decision rejected the admission of psychiatric opinion testimony which causally linked a defendant's psychiatric profile to a lack of capacity to intend because it found such testimony to lack scientific soundness

and reliability. In sharp contrast, the causal link between the physical state of intoxication and the capacity to intend is understood and was specifically recognized in *Steele. Id.* at 94 n. 7. *See* 5 Am. Jur. P.O.F. 2d 189–218. Commenting on the seventh circuit's decision in *Hughes,* which found inconsistent Wisconsin's decision to allow psychiatric evidence to establish a defense of intoxication, which negated capacity to form intent, while simultaneously barring psychiatric evidence relating to mental disorders offered for the same purpose, this court stated:

"the *Hughes* court reasoned that it was irrational for Wisconsin to allow some defendants to raise intoxication as a defense negating capacity to form specific intent concomitant to denying other defendants the right to introduce psychiatric evidence to negate the capacity to form specific intent. 576 F.2d at 1257 n. 19. We do not find this reasoning persuasive. As noted in *Bethea v. United States,* 365 A.2d 64 (Ct. App. D.C. 1976), in regard to the *Brawner* court's analogy quoted in Hughes:

" 'The rule that evidence of intoxication may be employed to demonstrate the absence of specific intent figured prominently in the Brawner court's advocacy of consistency in the treatment of expert evidence of mental impairment. The asserted analogy is flawed, however, by the fact that *there are significant evidentiary distinctions between psychiatric abnormality and the recognized incapacitating circumstances. Unlike the notion of partial or relative insanity, conditions such as intoxication, medication, epilepsy, infancy, or senility are, in varying degrees, susceptible to quantification or objective demonstration, and to lay understanding.* As the Ninth Circuit observed in *Wahrlich v. Arizona,* 479 F.2d 1137, 1138 (9th Cir.), cert. denied, 414 U.S. 1011, 94 S. Ct. 375, 38 L. Ed. 2d 249 (1973) :

" 'Exposure to the effects of age and of intoxicants upon state of mind is a part of common human experience which fact finders can understand and apply; indeed, they would apply them even if the state did not tell them they could. The esoterics of psychiatry are not within the ordinary ken.' *Bethea, supra* at 88." *Steele* at 94–95 n. 7. (Emphasis added.)

Thus, the basis for the *Steele* court's rejection of testimony concerning a defendant's mental or emotional condition on his or her ability to form the requisite intent is not applicable when applied to opinion testimony from a psychiatrist who is properly qualified as an expert on the effects of intoxication. Because of its susceptibility to objective demonstration and to lay understanding, expert opinion testimony which speaks exclusively to the effect of intoxication on specific intent is competent evidence.[5] *See* Sec. 907.02, Stats., set forth in full below.[6] That testimony is not brought within the prohibitions of *Steele* merely because the expert on the effects of intoxication coincidentally is a psychiatrist.[7]

[5] We are cognizant of the fact, as are many commentators, that alcohol dampens inhibitions, but does not generally impair the ability to act purposively. Note, *Alcohol Abuse and the Law*, 94 Harv. L. Rev. 1660, 1686 (1981); Hall, *Intoxication and Criminal Responsibility*, 57 Harv. L. Rev. 1045, 0153–54 (1944); Paulsen, *Intoxication as a Defense to Crime*, 1961 U. Ill. L. F. 1, 9 (1961). We are also aware of the significant body of research which substantiates the relationship between alcohol consumption and aggression, and alcohol consumption and crime. *See* National Institute of Justice, *Alcohol Use and Criminal Behavior —an Executive Summary*, November 1981 for a survey of the research literature in the area. *See* also J. Collins, Jr., *Drinking and Crime*, 1981. These studies clearly suggest that evidence of intoxication may be more likely to indicate that a person did not intend to cause a future consequence, than to demonstrate that he or she did not intend an act actually committed. Note, *Alcohol Abuse and the Law, supra* at 1687. Nonetheless, we find that expert opinion testimony from a properly qualified expert on the effects of intoxication, including that offered by a psychiatrist, is competent evidence and may well be persuasive in certain cases.

[6] "907.02 **Testimony by experts.** If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

[7] Clearly a person who is not qualified as an expert in the effects of intoxicants but who observed the defendant's alcohol consumption or intoxicated condition may give such testimony as well.

■

In conclusion, *Steele* does not render inadmissible *all* expert opinion evidence from a psychiatrist on the issue of a defendant's capacity to form intent. We reemphasize that the *Steele* decision was predicated on this court's disbelief in the ability of psychiatry to causally link psychiatric disorders to a lack of capacity to form specific intent. We hold that a psychiatrist, properly qualified as an expert on the effects of intoxicants, may render an expert opinion as to whether a defendant's voluntary intoxicated condition negatived the defendant's capacity to form the requisite intent, but only if that opinion is based solely on the defendant's voluntary intoxicated condition.

However, we offer a cautionary note to trial courts when expert opinion testimony from a psychiatrist is offered to causally link a defendant's intoxicated condition with a lack of capacity to form the requisite intent. As we have noted in our review of the basis and scope of *Steele*, there may be a problem with the inconsistency between the law's conception of intent and the psychiatrist's understanding of the term. Nevertheless, it would not be logical to prohibit psychiatrists who are properly qualified as experts on the effects of intoxication from giving expert medical opinion testimony on the effects of intoxication just because of their psychiatric background. However, unlike other witnesses who are expert on the effect of intoxication on capacity to intend, psychiatrists may have a natural tendency, due to their training, to consider a defendant's mental health history in formulating their opinions. Trial courts must carefully scrutinize such testimony to ensure that a de-

---

"907.01 **Opinion testimony by lay witnesses.** If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."

fendant's mental health history is not being considered by any expert, psychiatrist or not, in reaching his or her conclusion that the defendant lacked the capacity to form the requisite criminal intent due to his or her voluntary intoxication.

## II.

### DID THE TRIAL COURT PROPERLY EXCLUDE THE PSYCHIATRIC OPINION TESTIMONY ON THE ISSUE OF FLATTUM'S INTENT TO KILL?

The trial court refused to permit the defense's psychiatric witness to answer the following hypothetical question in front of the jury, finding the emphasized language objectionable:

"Doctor, Wisconsin law defines first degree murder as being committed by one who causes the death of another human being with the intent to kill that person. The intent to kill is defined by Wisconsin law as the mental purpose to take the life of another human being. Relying on the definitions, Doctor, I ask you to assume that the following facts for purposes of this hypothetical question: assume that a man has a long standing history of alcoholism which is currently diagnosed as being in a chronic phase. Assume further that this man has a chronological history identical to that of Bernard Flattum's. *Assume further that this man has a psychiatric history. [sic] Identical to that of Bernard Flattum's.* Assume further that this man is five feet, eleven inches tall and weighs a hundred sixty pounds. Assume further that on a particular day, he consumes no food, but does consume twenty-two cans of beer from eight a.m. until two thirty p.m. Assuming all of those facts to be true, do you have an opinion to a degree of medical certainty as to whether this man would be able to form the specific intent to commit murder as it has been defined for you?" (Emphasis added.)

The psychiatrist would have answered that question "yes," and offered the following opinion: "I do not think

he could develope [sic] the specific intent to commit murder."

Judge Bartholomew, in trying to determine the purpose of Dr. Schwartz's testimony as it related to the hypothetical question, asked the following:

"Now as I understand the testimony of Dr. Schwartz, he would be wrapping up in his testimony his analysis of a hypothetical person, comparable to the psychiatric history of the Defendant. He would be discussing the various tests that he's performed on the Defendant and then applying the hypothetical involving the alcohol consumption to that, to that particular person who has a similar psychiatric case history. Is that right?"

Defense counsel agreed with this characterization of the testimony.

Flattum argues that, consistent with *Loveday*, a psychiatrist's opinion regarding the effects of intoxication on the specific intent of a defendant necessitates consideration of "the whole man." He argues that a doctor must be permitted to describe the psychological as well as physical condition upon which the alcohol acted in order to properly give an opinion with regard to the effects of alcohol consumption on the defendant's capacity to form the requisite intent. We disagree.

We have previously held in *Steele* that a psychiatrist's opinion which purports to prove or disprove that because of a psychological condition the defendant was unable to form the requisite criminal intent "is neither competent, relevant nor probative. . . ." *Steele* at 97. We agree with the trial court that the psychiatrist's testimony makes it clear that the defendant's "psychiatric involvement" and "emotional history" were factors in forming his opinion that the defendant was unable to form the intent to kill. On cross-examination Dr. Schwartz testified that if the amount of alcohol the defendant had consumed was reduced from twenty-two

cans of beer to eight cans of beer his opinion as to the individual's inability to form the specific intent to commit murder would not change "given all the other facts." In explaining this answer Dr. Schwartz stated:

"You see in the hypothetical, *there are a number of situations and characteristics and psychiatric involvement. And emotional history and all this,* which differentiate our hypothetical person from every one.

"Now with this hypoethetical person, the answer is there's a possibility that given the right circumstances, eight or even fewer cans of beer might be enough for him to perform in a violent fashion. . . ." (Emphasis added.)

It is clear that the psychiatrist's opinion that the defendant lacked the capacity to form the requisite intent to kill regardless of whether Flattum drank twenty-two or eight cans of beer, depended on underlying facts which included Flattum's mental health history. This is not permissible under *Steele,* and accordingly, the opinion was properly held inadmissible.

The trial court's ruling did not contravene our holding in *Loveday.* The trial court ruled:

"This Court certainly is not saying that a medical doctor or a psychiatrist who is a medical doctor cannot testify as to the effect of alcohol. . . . If the defense wishes to use Dr. Schwartz to describe effects of alcohol as parts of his testimony indicate, it's the opinion of this Court that the prosecution could not complain. A medical doctor who has studied intoxication can go into effects of intoxication. . . . He has a right to have Dr. Schwartz or some other doctor bring into this court medical testimony as to the effects of alcohol. And as to the effects of alcohol as they relate to individual."

Consistent with this ruling, the psychiatrist testified about the effects of alcohol consumption on the brain and thinking and motor response of an individual. He also testified that in his opinion if a man five-feet-eleven

inches tall weighing 160 pounds, consumed no food but drank twenty-two twelve-ounce cans of beer over a six and one-half hour period, he would be intoxicated. The psychiatrist was not asked whether this intoxication was sufficient to negative the mental state required to commit first-degree murder. The defense failed to elicit this type of testimony. Such an inquiry, had the psychiatrist been an expert on the effects of intoxication, would have been admissible, consistent with the *Loveday* decision.

We conclude that the trial court did not restrict the defendant's right to introduce expert opinion testimony of a psychiatrist that related exclusively to the effect of alcohol consumption on his capacity to form the requisite intent. The trial court properly excluded the psychriatrist's opinion that the defendant's consumption of alcohol combined with the defendant's psychiatric history negated his capacity to form the requisite criminal intent. *Steele* clearly mandated this result, for if psychiatrists are incompetent to assess the effect of a defendant's mental disease or defect on the defendant's capacity to form the requisite intent, they are equally incapable of making this assessment when the additional variable of intoxication is placed into the equation. To permit the introduction of the proffered testimony because one of the variables that went into the psychiatrist's conclusion was the defendant's alcohol consumption would allow the defendant to circumvent the rule of *Steele,* and would strike at the very basis upon which *Steele* stands.

### III.

### *IS MENTAL HEALTH HISTORY EVIDENCE ADMISSIBLE, IF RELEVANT, TO PROVE OR DISPROVE THE DEFENDANT'S CAPACITY TO FORM INTENT?*

Flattum argues that mental health history testimony is admissible, if relevant, on the issue of a defendant's capacity to form intent. He states that he attempted to introduce testimony about his mental health history at trial, but that such testimony was excluded by the trial court. Specifically, Flattum points to defense counsel's decision not to call an individual to testify regarding Flattum's stay at St. Croix Health Center, following what it perceived to be the trial courts' blanket exclusion of all mental health history evidence. While the state argues at oral argument that this case does not involve the exclusion of psychiatric testimony short of capacity to intend, it does agree with Flattum that mental health history evidence is admissible, if relevant, to prove or disprove the defendant's capacity to form intent.

This question concerning the admissibility of mental health history evidence under *Steele* has been framed elsewhere as follows: "whether it is only the psychiatrist's *opinion* as to the legal conclusion (i.e., no intent to kill) that cannot be testified to, or whether *all* psychiatric testimony that may have a factual bearing on the existence of the requisite intent is also not relevant." (Emphasis added.) Dickey, Remington, & Schultz, *supra* at 333 n. 7.

We emphasize that *Steele* did not bar all psychiatric evidence that has a factual bearing on intent. We specifically noted in *Steele* that we did not intend to exclude all evidence tending to prove or disprove the state of mind of the defendant. *Steele* at 97–98. Rather, we barred only psychiatric opinion testimony on the issue of capacity to form intent when that opinion is grounded on the defendant's mental health history.

In *Steele,* we observed in the statement of the case that the following psychiatric evidence was admitted in Steele's trial:

"Extensive psychiatric and personal history in respect to Steele was introduced without objection by the defense at the guilt phase of the trial. It showed that he had a long history of psychiatric and social problems, that he had been placed in an institution for disturbed children, and that he had been in a boys' school and in four foster homes. He spent more than a year in Mendota State Hospital beginning in 1960. He enlisted in the Navy in 1963; but after five weeks in a regular unit he was placed in a psychiatric unit, and he was subsequently discharged. Upon discharge, he was readmitted to Mendota State Hospital. There was also evidence to show that Steele was a compulsive gambler and that he had gone on at least five gambling binges at Las Vegas. The purpose of all of this evidence was to cast doubt upon the defendant's intent to kill. This evidence, offered for the purpose of rebutting the presumption, was admitted with no objection by the state." *Id.* at 79–80.

While the admissibility of this psychiatric history was not an issue in the *Steele* case, we find, as the *Steele* court implicitly did, that either psychiatric testimony or lay testimony detailing the psychiatric and personal history of the defendant may be admitted, if relevant, to cast doubt upon or to prove the defendant's intent to commit the crime charged. What we prohibited in *Steele* was utilizing that testimony as a basis for eliciting psychiatric opinion testimony on the issue of capacity to form intent.

We are, however, troubled by the considerable body of research which demonstrates the low measure of reliability of psychiatric diagnosis. After engaging in a comprehensive review of studies in this area, one researcher concluded that:

" 'the most common research findings indicate that, on the average, one cannot expect to find agreement in more than 60% of cases between two psychiatrists.' The chances of a second psychiatrist agreeing with the diagnosis of a first psychiatrist 'are barely better than 50–50; or stated differently, there is about as much chance that

a different expert would come to some different conclusion as there is that the other would agree.'" Ennis & Litwack, *Psychiatry and the Presumption of Expertise: Flipping Coins in the Courtroom*, 62 Calif. L. Rev. 693, 701 (1974) (citing J. Ziskin, *Coping with Psychiatric and Psychological Testimony* (1st ed.)) (Footnote omitted).

These studies were conducted at a time when psychiatric diagnosis was made under a classification system contained in the Diagnostic and Statistical Manual (DSM–I and (DSM–II). American Psychiat. Assoc., *Diagnostic and Statistical Manual of Mental Disorders* (1st ed.) (2d ed.) These classification systems have been replaced by the Diagnostic and Statistical Manual (DSM–III), published in 1980. American Psychiat. Assoc., *Diagnostic and Statistical Manual of Mental Disorders*, 470 (3d ed. 1980). DSM–III uses relatively precisely defined categories, which include specific inclusion and exclusion criteria. Morse, *A Preference for Liberty: The Case Against Involuntary Commitment of the Mentally Disordered*, 70 Calif. L. Rev. 54, 70 (1982). Preliminary research indicates that these new categories have greatly ameliorated the problem of low diagnostic reliability. American Psychiat. Assoc., *supra* at 470 (3d ed. 1980). *See* J. Ziskin, 1 Coping with Psychiatric and Psychological Testimony 138–44 (3d ed. 1981) for a critique of the reliability of DSM–III.

Notwithstanding the problem of diagnostic reliability, proponents of psychiatric testimony regarding clinical facts emphasize that such testimony may aid the jury in determining a fact in issue. *See* Notes, *supra* at 765. Professors Dickey, Remington and Schultz reached the following conclusion about the use of psychiatric testimony that has a factual bearing on intent after assessing Wisconsin's experience with the use of psychiatric testimony:

"Psychiatric testimony with respect to the defendant's mental illness or mental retardation or with respect to

past treatment for mental illness or retardation ought to be admitted into evidence whenever relevant because (1) knowing as much about a defendant as can be known assists the jury in deciding why a defendant did what he did, an inquiry that is part of the process of deciding what the mental state of the defendant was at the time; (2) psychiatrists do have clinical and some research experience with respect to mental illness and retardation and are qualified to testify to the condition of the defendant and the usual effect the condition has *on a person;* (3) although it may be difficult, trial judges should be able to make a decision whether mental illness or retardation or earlier treatment for mental illness or retardation is relevant to the mental state required for the crime; and (4) the temptation to testify to achieve a result thought preferable by the witness is less when the witness is confined to describing the illness or retardation or the treatment given the defendant in the past." Dickey, Remington & Schultz, *supra* at 341. (Emphasis added.)

■

We find that properly qualified psychiatric testimony with respect to a defendant's mental health history is admissible if such testimony is shown to be relevant. We find, despite our concern about diagnostic reliability, that this category of evidence is not per se infirm due to unreliability. The party proffering psychiatric testimony of this type must demonstrate the legal significance of the clinical facts sought to be introduced. *See* Recent Developments, *Diminished Capacity-Recent Decisions and an Analytical Approach,* 30 Vand. L. Rev. 213, 221–22 (1977). We hasten to point out, however, that a psychiatrist is not permitted to testify as to the effect of a defendant's psychiatric condition on his or her capacity to form the requisite intent. As pointed out earlier in this opinion, such testimony is neither competent, relevant, nor probative. This is true whether such opinion testimony is offered with respect to a particular defendant or in response to hypothetical questions.

Trial courts are free to exclude such testimony, pursuant to sec. 904.02, Stats., if they find that the testimony is not relevant. *See Curl v. State,* 40 Wis. 2d 474, 484, 162 N.W.2d 77 (1968) (evidence of prior psychiatric hospitalizations was properly excluded because it was too remote in time to be material). Even if relevant, trial courts may exclude this evidence pursuant to sec. 904.03, if they find that the evidence's probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Trial courts may also determine that the proffered psychiatric testimony is inadmissible because it is not based on scientific knowledge, and that therefore the witness' conclusion is based on the same factors which the jury is free to use in reaching its conclusion. *See State v. Dalton,* 98 Wis. 2d 725, 298 N.W.2d 398 (Ct. App. 1980).

While these considerations may create a difficult task for trial courts, the task is not insurmountable. One commentator has suggested:

"The role of the courts should be to exercise proper discretion in assessing the probative value of psychiatric testimony offered to demonstrate a defendant's mental capacity. Because psychiatrists often are unable to match their evaluation of a defendant's mental condition to the culpable mental states defined by law, courts should not hesitate to exclude psychiatric testimony when a defendant fails to show a sufficient connection between his particular mental disability and his capacity to form the required mens rea." Recent Developments, *supra* at 237.

Having concluded that mental health history evidence is admissible, if relevant, to prove or disprove the defendant's capacity to form intent, we turn now to the

record to determine whether the trial court made a blanket exclusion of all psychiatric evidence, including mental health history evidence, and if so, whether the exclusion was erroneous.

As discussed in Section II of this opinion, the trial court excluded Dr. Schwartz's testimony that the defendant's voluntary intoxicated condition negatived the intent to kill because it found that Dr. Schwartz's opinion was based, in part, on the defendant's psychiatric profile. We held that such testimony was properly excluded because consistent with *Steele*, a psychiatrist is not competent to render such an opinion.

Although the trial courts' ruling about Dr. Schwartz's testimony may have suggested that the defendant was not permitted to offer testimony as to the defendant's mental health history at all, it is clear that the defendant failed to establish the relevancy of the mental health history evidence outside of the context of the hypothetical question. The defendant did not argue that any of the mental health history evidence had independent probative value. The defendant did not make a separate offer of proof regarding his psychiatric records from St. Croix Health Center. In fact, defense counsel later stated on the record that it did not call an alcohol assessment counselor to testify or offer records concerning Flattum's stay at the St. Croix Health Center into evidence because "of our discussion yesterday about alcoholism." The discussion defense counsel is referring to is the court's ruling regarding Dr. Schwartz's offer of proof as to the admissibility of psychiatric opinion evidence on the issue of the defendant's capacity to intend.

We therefore conclude that the trial court was correct in ruling the mental health history testimony inadmissible given that the defendant failed to establish the relevancy of any of the mental health history evidence outside of the context of the hypothetical question.

*By the Court.*—The decision of the court of appeals is affirmed.

STEINMETZ, J. (concurring). In this case, the trial court properly excluded the psychiatrist's testimony of the effect of the defendant's intoxication and his psychiatric history on his capacity to form a specific intent. Our holding in *Steele v. State,* 97 Wis. 2d 72, 294 N.W.2d 2 (1980), prohibited all expert testimony regarding the defendant's capacity to form a specific intent. The majority holds that "a psychiatrist, properly qualified as an expert on the effects of intoxicants, may render an expert opinion as to whether a defendant's voluntary intoxicated condition negatived the defendant's capacity to form the requisite intent . . . ." (At 297.) I write separately because I see no more reliability or trustworthiness in expert testimony based on the defendant's intoxication than that based on the defendant's psychiatric profile. The majority states: "However, unlike other witnesses who are expert on the effect of intoxication on capacity to intend, psychiatrists may have a natural tendency, due to their training, to consider a defendant's mental health history in formulating their opinions." (At 297.) The majority burdens trial judges and cautions them to be careful not to allow psychiatrists to combine the mental history of the defendant with his intoxicated state. I believe this to be neither possible nor appropriate.

The majority implies that there may be experts other than psychiatrists on the effect of intoxication on a person's capacity to form a specific intent. It does this by stating: "However, *unlike other witnesses who are expert on the effect of intoxication on the capacity to intend,* psychiatrists may have a natural tendency . . . to consider a defendant's mental health history . . . ." (At 297.) (Emphasis added.) The majority does not

even limit the opinion evidence as to intoxication influence on the capacity to form a specific intent to a person with some medical specialized training and knowledge regarding the function of the brain. For testimony on this sophisticated and esoteric opinion, there should at least be some specialized training required. Though "other experts" and these "students of alcohol" may be able to testify on the effect of alcohol on the body as to the nerves, muscles or motor functions, they are not trained or experienced on the effects of intoxicants on the ability to form a specific intent to do an act. Even if the majority were correct that there are experts as to the influence of intoxicants on brain dysfunctions, the only persons in society with any training or experience in that area of study are psychiatrists. I believe no other person could claim the ability to know the effects of intoxicants on the legal definition of a specific function of the brain, *i.e.*, to have the capacity to form a specific intent to act.

We have recognized that: " '[A] lay witness, who has the opportunity to observe the facts upon which he bases his opinion, may give his opinion whether a person at a particular time was or was not intoxicated.' . . . The evaluation of the opinion of such a witness is for the trier of the facts." *Milwaukee v. Johnston*, 21 Wis. 2d 411, 414–15, 124 N.W.2d 690 (1963).[1] Though we have held that lay persons who observe the condition of a defendant at a particular time may give opinion evidence as to whether the defendant was intoxicated, that is not the same as giving an opinion that the defendant's intoxicated condition prevented him from forming a spe-

[1] *See also State v. Burkman*, 96 Wis. 2d 630, 645, 292 N.W.2d 641 (1980); *State v. Bailey*, 54 Wis. 2d 679, 685, 196 N.W.2d 664 (1972); *Milwaukee v. Kelly*, 40 Wis. 2d 136, 138, 161 N.W.2d 271 (1968); *Milwaukee v. Bichel*, 35 Wis. 2d 66, 69, 150 N.W.2d 419 (1967); *Milwaukee v. Antczak*, 24 Wis. 2d 480, 484, 129 N.W.2d 125 (1964).

cific intent to commit the crime charged. It may be accepted that experts can give opinions on the effect of alcohol on the motor or musculature system of an individual but that is not the same as giving an opinion on the influence of alcohol on an individual's mental process, and in particular, not the same as an opinion as to the effect of alcohol on his specific intent to do a specific criminal act.

In *Steele,* in footnote 7, the court accepted the proposition that the effect of intoxicants upon a person's state of mind is a part of common human experience which fact finders can understand and apply. While that may generally be true, the statement falls short of stating that the effect of intoxicants upon a state of mind *to commit a particular criminal act* is a part of common human experience. Even so, the jury is more capable of forming the opinion as to the effect of alcohol on the defendant's brain at the particular moment when the criminal act was committed than anyone, including so-called alcoholic influence experts. The jury will have heard testimony about the defendant's physical actions, words, reactions and claimed alcoholic intake. It will be able to consider all of those factors and decide whether the act was methodically or thoughtlessly accomplished. There is no need to superimpose on this evidence untested, unscientific, untrustworthy, expert opinion as to the influence of alcohol, an opinion impossible to test or compare to any objective standards of alcohol influence. Alcohol may have an influence on the defendant's behavior at a particular moment but so does his emotional and psychiatric background. In *Steele* we held such influences do not form the trustworthy basis for an opinion regarding the defendant's capacity to form intent.

*Loveday v. State,* 74 Wis. 2d 503, 247 N.W.2d 116 (1976), reaffirmed by the majority, was a decision rendered four years before *Steele* and, therefore, must be

examined in terms of *Steele*. It is true that sec. 939.42, Stats., allows a complete defense to the guilt of having committed a crime if the person's condition "[n]egatives the existence of a state of mind essential to the crime." In other words, sec. 939.42 allows a complete defense if the specific intent to commit the crime is negated by the defendant's intoxicated condition. The determination is to be made by the trier of fact. However, the statute does not serve as a foundation for the acceptability of opinion evidence of so-called "alcohol influence experts" to be presented to the trier of fact.

The majority states at 296 of the opinion the following: "Because of its susceptibility to objective demonstration and to lay understanding, expert opinion testimony which speaks exclusively to the effect of intoxication on specific intent is competent evidence." This statement goes from an unwarranted assumption to a foregone conclusion. The weakness of that statement is highlighted by footnote 5 (at 296) which by citation contradicts the majority's conclusion. The majority states: *"Nonetheless,* we find that expert opinion testimony from a properly qualified expert on the effects of intoxication, including that offered by a psychiatrist, is competent evidence and may well be persuasive in certain cases." (Emphasis added.) In spite of all the admonitions in footnote 5, the majority ignores such expertise on the subject of intoxication.

I do not believe expert opinion evidence as to alcohol affecting the specific intent necessary for criminal guilt is any more trustworthy than psychiatric opinion evidence which was ruled out of order in *Steele* in the intent phase of the trial. *Steele* stated: "What we bar from introduction at the guilt phase of the trial is expert opinion testimony tending to prove or disprove the defendant's capacity to form the requisite criminal intent." 97 Wis. 2d at 98. I would apply the same bar to expert

opinion testimony tending to prove or disprove the defendant's capacity to form the requisite criminal intent when the foundation of such opinion testimony is alcoholic consumption for the same reasons stated in *Steele*, which were: "[W]e have substantial doubt about the competency, relevance, and probativeness of the particular testimony for the purpose of showing diminished capacity to form intent." *Id.* at 98–99.

It is strange indeed that in *Steele* we barred psychiatric opinion evidence as to mental capacity to form an intent and yet today we allow opinion evidence from a so-called expert on alcohol influence on specific intent. This court has historically placed alcohol and its intoxicating effect on the mind in the same category as all other causes affecting the mind. See *Hempton v. State,* 111 Wis. 127, 135, 86 N.W. 596 (1901). The *Hempton* court cited *Terrill v. State,* 74 Wis. 278, 42 Wis. 243 (1889), and stated the rule as: "[D]runkenness, *together with other causes affecting the mind,* is proper for the consideration of the jury . . . ." (Emphasis added.) To be consistent with these cases, we should now rule that *Steele* denied opinion evidence as to the capacity to form a specific intent, not only based on the mental history of the defendant, but also based on his claimed intoxicated state at the time of the commission of the offense.

This defendant in the case testified to the jury that he was so intoxicated at the time of the killing that he lacked the capacity to form the specific intent to commit the crime of murder. He testified that on the day of the crime between 8:00 a.m. and 1:30 p.m., he drank twenty 12 ounce cans of beer. Then between 1:40 p.m. and 2:30 p.m., he went to see his son at the son's day care center. Because the son was not outside, he decided to go to Margaret Wink's home since the day care center was visible from her house. He was aware of that fact having been at her house previously. He stated his memories

of the day were vague but he remembered drinking two or three more beers while at the Wink home. Then he recalls asking to use the bathroom and coming out of that room to find Wink bloody and lying on the floor having been strangled and stabbed to death. The defendant called other witnesses to testify concerning his intoxicated state. His housemate found only eight empty cans of beer, not 20, in the house and other persons who knew him testified the defendant did not seem "out of the ordinary" shortly after the time of the murder.

The defendant presented the defense of his intoxicated condition through testimony of persons who knew him and lived with him. The jury had all of the evidence it needed to consider the facts of the killing, the defendant's deliberate decision to see his son and having failed, to then go to the victim's home to observe his son's day care center from there. The facts given by the defendant himself show he was acting deliberately and intentionally until the time of the brutal murder. Whether the alcohol had any influence on him at all, bears on his criminal responsibility which is a moral issue considered at a second phase of the bifurcated trial. *See Steele*, 97 Wis. 2d at 96. Since there is no requirement that a bifurcated trial be held due to the nature of the plea in this case, if the defendant believes it is helpful and wishes to present such expert alcoholic influence opinion evidence, it can be done at the dispositional phase of the case as a mitigating circumstance.

If medical expert opinion evidence is received at trial concerning the influence of alcohol on the mental capacity to form a specific intent to commit a crime during trial, we will create the same testimonial problems we eliminated in *Steele*. The result of the majority opinion will be a contest of alcoholic influence experts in areas where the jury can arrive at its decision by balancing the testimony of the alcohol consumption against the

defendant's actions before, after and at the time of the crime as testified to by observers and the defendant himself if he testifies. Under the rule adopted by the majority opinion, we will be confronted by trial court records which will show a marked propensity of those who purport to have alcoholic influence expertise to tailor their testimony to the particular client whom they represent. (*See Steele* at 97 for the statement of dismay as applied to testimony of psychiatric expertise.) The jury is better equipped to make the decision of the influence of alcohol on the defendant's mental capacity as applied to form a specific intent than it is to determine on the effect of a defendant's psychiatric history on the capacity to form intent. The jury does not need the so-called help of expert hired guns to offer their opinions which are lacking in scientific soundness and especially where there is substantial legal doubt that those opinions have probative value on the point for which they will be asserted.

I accept the following statement of *Steele* at 97 and apply it to medical opinion evidence on the effects of intoxicants:

"We conclude that, under the present state of the law, the proffered evidence is neither competent, relevant, nor probative for the purpose asserted in the instant case. Thus, in addition to the fact that the admission of the psychiatric evidence in the guilt phase of the bifurcated trial would put in jeopardy safeguards designed for the protection of the defendant, as well as of society, and in addition to the problems of the duplicative evidence in the various stages of the bifurcated trial which result in cumulative evidence and jury confusion, we conclude that the evidence itself is suspect and is properly excluded. The exclusion is proper in either a single phase trial or the guilt phase of a bifurcated trial."

*Muench v. Israel,* 715 F.2d 1124 (7th Cir. 1983), stated: "We therefore hold that a state is not constitutionally compelled to recognize the doctrine of diminished ca-

pacity and hence a state may exclude expert testimony offered for the purpose of establishing that a criminal defendant lacked the capacity to form a specific intent." *Id.* at 1144–45. This is what this court did in *Steele* and is what we should do in this case. I would reverse *Loveday* directly since I believe it was reversed by implication by *Steele.*

I would also affirm in this case but for the reasons stated in this concurring opinion.

I am authorized to state that JUSTICE WILLIAM G. CALLOW and JUSTICE LOUIS J. CECI join this concurring opinion.