In the

# United States Court of Appeals
### For the Seventh Circuit

No. 14-1657

CRYSTAL KEITH,

*Petitioner-Appellant,*

*v.*

DEANNE SCHAUB, Warden, Taycheedah Correctional Institution,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 12-C-559 — **William E. Callahan, Jr.**, *Magistrate Judge.*

ARGUED NOVEMBER 3, 2014 — DECIDED NOVEMBER 14, 2014

Before WOOD, *Chief Judge*, and EASTERBROOK and HAMILTON, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Crystal Keith was sentenced to imprisonment for reckless homicide after a jury found that she had killed Christopher, a 13-month-old baby in her care. Keith called 911 and told the operator that she had "just killed a baby." During a videotaped interview she admitted

> hitting Christopher to make him stop crying, lifting Christopher by his feet and placing his body weight on his head, slapping and choking Christopher, and attempting to resuscitate Christopher by inserting her finger and a hairbrush down his throat to induce vomiting. Keith also provided details of the various ways in which she abused C.T. [a second child in her care], including burning C.T.'s feet with hot water, hitting C.T.'s feet so much that Keith began covering C.T.'s feet with socks to avoid anyone noticing her injuries, and slapping C.T. so hard that Keith covered C.T.'s face with a scarf to prevent Keith's husband, Reginald, from noticing.

*State v. Keith*, 2011 WI App. 99 ¶2. Keith applied for a writ of habeas corpus under 28 U.S.C. §2254, contending that the state trial judge unduly limited the testimony of a psychologist. The district court denied the petition.

> The trial judge allowed Michael Kula, the psychologist,

> to testify about his diagnoses and the general characteristics of people with those diagnoses, but did not allow Dr. Kula to testify about Keith's history of abuse. Dr. Kula then testified, in the presence of the jury, that Keith suffered from a schizoid personality disorder, major depressive disorder, general anxiety disorder, post-traumatic stress disorder, and obsessive-compulsive disorder. Dr. Kula also testified that Keith had an IQ of 74.

2011 WI App. 99 ¶15. The judge did not allow Kula to testify about Keith's mental state on the day Christopher died. The judge thought Keith's history (she had been beaten and sexually abused as a child) and its consequences irrelevant to a charge of reckless homicide and barred by the doctrine of *State v. Morgan*, 195 Wis. 2d 388, 410 (Wis. App. 1995), under which a psychologist or psychiatrist "may not give his or her opinion on the issue of capacity to form intent if that opinion rests in whole or in part on the defendant's mental health history." (*Morgan* interprets *Steele v. State*, 97 Wis. 2d 72

(1980), and *State v. Flattum*, 122 Wis. 2d 282 (1985). State courts sometimes call its approach the *Steele–Flattum* doctrine.) Keith maintains that, by excluding some of Kula's proposed testimony, the state judiciary violated her constitutional right to present a defense to the charge she was facing.

To the extent the state judiciary held part of Kula's testimony inadmissible as irrelevant, it was making a decision of state law. A federal court cannot second-guess the state about the elements of a state offense and what testimony is or isn't relevant. See, e.g., *Bradshaw v. Richey*, 546 U.S. 74 (2005); *Gilmore v. Taylor*, 508 U.S. 333 (1993); *Estelle v. McGuire*, 502 U.S. 62 (1991). In Wisconsin reckless homicide is a general-intent crime, which means that Keith could be convicted without proof that she wanted Christopher to die; the prosecutor had to prove that she knew what she was doing to Christopher and understood the potential consequences but did not need to prove that she had any other knowledge or intent. The state courts concluded that events in Keith's childhood would not shed light on the questions relevant under state law. That decision does not present a federal question.

To the extent the state judiciary relied on the doctrine of *Morgan* there is a potential federal issue, because *Morgan* excludes some testimony about a defendant's state of mind at the time of the offense that could be relevant, as state law defines the crime. But Wisconsin is not alone in limiting the extent to which mental-health professionals can testify about a defendant's mental state at the time of the crime, or the reasons for that mental state. Federal Rule of Evidence 704(b), adopted in the aftermath of John Hinckley's attempt to assassinate President Reagan, provides that "an expert

witness must not state an opinion about whether the de-fendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Rule 704(b), which treats a defendant's intent as a matter for lay rather than expert decision, has been sustained against constitutional challenge. See *United States v. Abou-Kassem*, 78 F.3d 161 (5th Cir. 1996); *United States v. Austin*, 981 F.2d 1163 (10th Cir. 1992); *United States v. Blumberg*, 961 F.2d 787 (11th Cir. 1992). And we held in *Morgan v. Krenke*, 232 F.3d 562 (7th Cir. 2000); *Haas v. Abrahamson*, 910 F.2d 384, 398 (7th Cir. 1990); and *Muench v. Israel*, 715 F.2d 1124, 1144–45 (7th Cir. 1983), that Wisconsin's limits on expert testimony about a defendant's mental state likewise are constitutional.

Keith does not contest any of these decisions. Instead she contends that they are distinguishable because they concern the use of expert evidence in prosecutions for specific-intent offenses, such as premeditated murder, while reckless homi-cide is a general-intent crime. It is not clear to us why expert evidence about a defendant's mental state (and the circum-stances that produced it) should be *more* admissible when the accused's mental state plays a lesser role. The proposed difference sounds topsy-turvy; why should a state be al-lowed to exclude expert evidence when it is directly on point (for a specific-intent crime) but required to admit it when it is at best marginally relevant (for a general-intent crime)?

At all events, we cannot create a specific-intent versus general-intent difference in collateral review under §2254(d)(1), which allows a federal court to issue a writ only when the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States". The Supreme Court has never "clearly established" Keith's proposed distinction between the use of expert evidence in specific-intent and general-intent situations. Indeed, the Supreme Court has not "clearly established" that expert testimony about the defendant's mental state and the reasons leading to it must be admitted in any non-capital prosecution.

That is why Keith invokes the generic "right to present a defense" rather than a concrete rule about expert testimony. Yet the Supreme Court has concluded that §2254(d)(1) forbids framing the theory at such a high level of generality. *Nevada v. Jackson*, 133 S. Ct. 1990 (2013), is particularly instructive, because a court of appeals proceeded exactly as Keith asks us to. A state court had excluded some evidence; the court of appeals issued a writ of habeas corpus after concluding that the state judiciary violated the right to present a defense; the Supreme Court reversed, observing that "[b]y framing our precedents at such a high level of generality, a lower federal court could transform even the most imaginative extension of existing case law into 'clearly established Federal law, as determined by the Supreme Court.'" *Id*. at 1994. The right question, *Jackson* held, is whether decisions of the Supreme Court establish that the particular decision the state judiciary reached is forbidden. The Justices stated in *Jackson* that this meant decisions about the admissibility of the sort of evidence the defense had proffered. See also, e.g., *Lopez v. Smith*, No. 13–946 (U.S. Oct. 6, 2014), slip op. 5–6; *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450–51 (2013); *Parker v. Matthews*, 132 S. Ct. 2148, 2155–56 (2012).

That is equally so here. Keith does not identify any decision by the Supreme Court establishing that judges in non-

capital criminal trials must admit expert evidence about the defendant's state of mind or history of being abused as a child. Section 2254(d)(1) therefore has not been satisfied.

A few words are in order about why we have applied §2254(d), which governs only if the federal "claim was adjudicated on the merits in State court proceedings". Keith observes that the state's appellate court did not discuss the right to present a defense and maintains that §2254(d) therefore is irrelevant. Yet the lack of discussion does not take the statute out of the picture. A claim has been "adjudicated" if it was presented and rejected, whether or not the state court chose to give reasons or indeed even mention the contention. See *Harrington v. Richter*, 131 S. Ct. 770, 783–85 (2011); *Johnson v. Williams*, 133 S. Ct. 1088, 1094–97 (2013).

Counsel for Wisconsin contends that the state court did not discuss the right to present a defense because Keith herself did not do so at trial or on direct appeal and therefore has defaulted the contention, unless revived through the lens of ineffective assistance, an argument that Keith's briefs in this court do not advance. If the state appellate court had found that the claim had been defaulted as a matter of state law, then even the degree of review allowed by §2254(d)(1) would be unavailable. But the state itself forfeited this argument by not raising it in the district court. Since the state judiciary conclusively rejected all of the arguments Keith presented, §2254(d)(1) applies.

And even if we were to use Keith's preferred level of generality, bypass §2254(d)(1), and ask whether she was allowed to present a mental-state defense, the answer would be yes. The trial judge allowed Kula to deliver most of his proposed testimony. Keith had a fundamentally fair trial.

AFFIRMED